

AGREEMENT made as of this 9th day of July 2004, between Hyperion, an imprint of Buena Vista Books, Inc. ("Publisher"), 77 West 66th Street, New York, NY 10023, and **Jessica Cutler** ("Author"), whose address is c/o **Carlisle & Company, 260 West 39th Street, 6th floor, c/o ajax, New York, NY 10018**, regarding a work of fiction tentatively entitled **THE WASHINGTONIENNE: A Novel** (the "Work") and described as follows: **The Washingtonienne is a roman á clef about a young woman's escapades in the marble hallways and posh hotels of Washington, DC, based on the author's real life social and sexual escapades as recorded in her scandal-inducing blog, Washingtonienne.**

Author and Publisher agree that:

1.    <u>Delivery</u>

     (a)    <u>Material to be Delivered.</u> Author will deliver to Publisher by **September 1, 2004** two neatly typed, double-spaced copies of the complete manuscript for the Work, which shall be approximately **80,000 – 90,000** words in length, all in content, length and form satisfactory to Publisher.

     (b)    <u>Permissions</u>. If permission from others is required for publication of any material to be delivered hereunder or for the exercise of any of the rights granted herein, Author shall, at Author's own expense, obtain such permissions and deliver them to Publisher by the due date for such material. Such permissions shall cover use of such material in all permitted editions, versions and uses of the Work and the exploitation of all rights granted herein and shall otherwise be acceptable to Publisher. If Author fails to furnish such permissions, Publisher shall have the right, at its sole option, either to secure such permissions and charge the cost thereof directly to Author or to Author's account, or to terminate this Agreement in accordance with the provisions of subparagraph 10(a) below.

     (c)    The manuscript, permissions and all other materials mentioned in subparagraphs (a) and (b) above are hereinafter referred to jointly and severally as the "Material."

2.    <u>Grant of Rights</u>

Author grants and assigns to Publisher the sole and exclusive rights for the United States, its territories and possessions, the Philippines and Canada and the non-exclusive rights in the rest of the world, excluding the United Kingdom, Eire, Australia, New Zealand and South Africa (hereinafter the "Territory") during the entire term of copyright and any renewals and extensions thereof:

     (a)    to print, publish and distribute the Material in book form, including hardcover, trade paperback and mass market paperback, in the English language;



EXHIBIT

C

Dockets.Justia.com

(b)     to make, reproduce, publish, distribute, or perform non-dramatic audio recordings of the Material in any form or method of recording or transmission now in existence or hereafter invented, including, but not limited to, cassette, disc, tape and wire recording, electronic transmission via the Internet or otherwise, but excluding motion pictures and transmission by television or radio or on the live stage ("Audio"). Author shall have approval over the recording script(s) of any condensed or abridged version, such approval not to be unreasonably withheld, provided that the Publisher reserves the right to edit the approved scripts in order to satisfy recording time constraints. At Publisher's request, Author shall perform services as the reader of the Audio for a fee of $2,500.00;

(c)     to make, reproduce, publish, distribute, perform or display non-dramatic verbatim reproductions of all or a portion of the Material in complete, condensed, adapted and abridged versions (provided that any condensation, adaptation or abridgment will be subject to Author's approval, not to be unreasonably withheld), in any form or method of reproduction or transmission now in existence or hereafter invented intended to make the Work available in visual form for reading, including, but not limited to, microfilm, microfiche, photocopying, electronic transmission via the Internet or otherwise, and transparencies ("E-books");

(d)     ~~to make, reproduce, publish, distribute, perform or display non-dramatic audio and/or non-dramatic visual recordings of adaptations of the Material in combination with additional sounds and/or images in any form or method of recording or transmission now in existence or hereafter invented, including, but not limited to, cassette, disc, tape and wire recording, transmission via the Internet or otherwise, and transparencies, but excluding motion pictures and transmission by television or radio or on the live stage ("Multimedia");~~

(e)     to exercise or authorize the exercise of the other rights in and to the Material set forth in paragraph 6 hereof;

(f)     to utilize the Material in Publisher's catalog or in other promotional pieces or advertisements relating to the subject matter hereof including the right to place or permit others to place portions of the Work (not to exceed 7,500 words) on Internet web-site(s) for advertising and promotional purposes.

3.   Editorial Changes and Proofs

(a)     No material changes to the Material may be made without Author's approval. Publisher shall have the right to copyedit the Material in accordance with its standard style of punctuation, spelling, capitalization and usage.

(b)     Author agrees to review, correct, revise, and return copyedited or other manuscripts, proofs or other Material sent back to Author by Publisher, within two weeks of receipt. Author agrees to pay (i) all charges in excess of ten percent (10%) of the cost of composition for alterations or additions (other than

corrections of printers' errors) which Author makes in proofs, plates or film after the type has been set in conformity with the copyedited manuscript, and (ii) all charges for any alterations made at the request of Author in subsequent printings of the Work. These costs shall be charged to Author's account, except that Author agrees to pay directly any charges in excess of fifteen percent (15%) of the original cost of composition.

4.    Advance

Publisher shall pay Author, as an advance against sums due to Author hereunder, the sum of **Two Hundred Thirty-Five Thousand Dollars ($235,000.00)** payable as follows:

(a)    $78,334.00 upon execution of this Agreement;

(b)    $78,333.00 upon delivery by Author and acceptance by Publisher of the complete Material, satisfactory in content, length and form; and

(c)    $78,333.00 on initial publication of the Work by the Publisher.

5.    Royalties

Publisher shall pay to Author the following royalties on sales, less returns, of copies of the Work published by Publisher or on other rights in the Material exercised by Publisher:

(a)    On copies sold through ordinary channels of trade in the United States:

    i)    Hardcover:  ten percent (10%) of the invoice price for the first 5,000 copies; twelve and one-half percent (12 1/2%) thereof for copies from 5,001 to 10,000; and fifteen percent (15%) thereof for all copies in excess of 10,000;

    ii)    Trade Paperback:  seven and one-half percent (7 1/2%) of the invoice price;

    iii)    Mass Market Paperback:  eight percent (8%) of the invoice price for the first 150,000 copies and ten percent (10%) thereof for all copies thereafter.

(b)    On copies sold to book clubs **(in consultation with Author)** royalty inclusive in the United States:

    i)    Hardcover:  Ten percent (10%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

    ii)    Trade Paperback:  Ten percent (10%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

Cutler - The Washingtonienne.doc

      iii)    <u>Mass Market Paperback:</u>  Ten percent (10%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

(c)    On copies sold as premiums* in the United States:

      i)    <u>Hardcover:</u>  Seven and one half percent (7-1/2%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

      ii)    <u>Trade Paperback:</u>  Seven and one half percent (7-1/2%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

      iii)    <u>Mass Market Paperback:</u>  Seven and one half percent (7-1/2%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

**\*(Premium sales are bulk sales made outside traditional book channels, which copies are given away by the buyer for promotion).**

(d)    On copies sold in special sales* in the United States:

      i)    <u>Hardcover:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

      ii)    <u>Trade Paperback:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

      iii)    <u>Mass Market Paperback:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

**\*(Special sales are bulk sales made outside traditional book channels, which copies are sold by the buyer).**

(e)    On copies sold in the United States by direct marketing methods:

      i)    <u>Hardcover:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

      ii)    <u>Trade Paperback:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any;

       iii)    <u>Mass Market Paperback:</u>  Seven percent (7%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

(f)    On all copies in any format sold in Canada through ordinary channels of trade, two-thirds of the royalty rate applicable to such sales in the United States.

(g)    On all English language copies sold outside Canada and the United States:

       i)    <u>Hardcover:</u>  Ten percent (10%) of the amounts received by Publisher, excluding taxes, freight and handling charges invoiced to the customer, if any;

       ii)    <u>Trade Paperback:</u>  Ten percent (10%) of the amounts received by Publisher, excluding taxes, freight and handling charges invoiced to the customer, if any;

       iii)    <u>Mass Market Paperback:</u>  Ten percent (10%) of the amounts received by Publisher, excluding taxes, freight and handling charges invoiced to the customer, if any.

(h)    On hardcover or trade or mass market paperback copies sold in any calendar year commencing more than one year after the first publication of such edition in which sales of such edition are 1,000 copies or less, two-thirds of the royalty rates specified above, provided Publisher has made a second or subsequent printing of 2,500 copies or less of such edition.  This reduction in royalties is made to enable Publisher to keep the Work in print as long as possible.

(i)    On all copies sold through remainder sales at more than the cost of manufacture, 5% of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.  Publisher will use its best efforts to give Author notice of its intention to remainder copies of the Work and a reasonable opportunity to purchase copies at the best remainder price.  However, Publisher's failure to do so shall not be considered a breach of this Agreement nor give Author any claim for damages.

(j)    On Audio copies: ten percent (10%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

(k)    On E-books: twenty-five percent (25%) of the amounts received by Publisher, excluding taxes and invoiced shipping and handling charges, if any.

(l)    On Multimedia copies: **Reserved to Author**

(m)    No royalties are payable to Author on copies given or sold to Author, or otherwise given away, on copies sold at or below the cost of manufacture, or on copies destroyed.

(n)     Only copies sold pursuant to (a) shall be counted in determining the applicable
        percentages of any graduated scales set forth therein.

6.    Subsidiary Rights

Author grants and assigns to Publisher the sole and exclusive right to exercise or license
the subsidiary rights in and to the Material described below.  In the event that Publisher
licenses to a third party the right to exercise any of the subsidiary rights described below,
the following percentages of the proceeds received by Publisher from any such license
shall be given to Author.  **Upon Author's request, Author's share of income in excess
of one thousand dollars ($1,000.00) derived from the licensing of subsidiary rights in
the Work, less unearned advances, shall be paid to Author within thirty (30) days of
Publisher's receipt thereof.**

|  |  | Author's Percentage |
|---|---|---|
| (a) | Periodical or newspaper publication prior to book publication: | 90 |
| (b) | Periodical or newspaper publication following book publication; syndication: | 50 |
| (c) | Publication of condensations, abridgments, selections and in anthologies: | 50 |
| (d) | Book club publication.  **Publisher shall consult with Author prior to licensing such rights:** | 50 |
| (e) | Publication of editions for premium or special use or for direct sale to consumers through mail order or other direct marketing methods: | 50 |
| (f) | English language paperback editions in the United States and Canada: | 50 |
| (g) | English language hardcover editions in the United States and Canada: | 50 |
| (h) | Audio: | 50 |
| (i) | E-books: | 50 |

Cutler - The Washingtonienne.doc

(j)     Braille, large-type and other editions
        for the handicapped (Publisher may
        also grant such rights to recognized
        nonprofit organizations for the
        handicapped without charge and
        without payment to Author.):                           50

(k)     Multimedia:                                    **Reserved to Author**

(l)     Foreign language book publication
        (including the right to sublicense the
        other rights granted in this Agreement):       **Reserved to Author**

(m)     English language book publication
        outside the United States and Canada
        (including the right to sublicense the
        other rights granted in this Agreement):       **Reserved to Author**

(n)     Motion picture, television, radio and
        live stage dramatic adaptation rights
        and allied rights and lyric rights:            **Reserved to Author**

(o)     Commercial and/or merchandising
        rights:                                        **Reserved to Author**

**If Publisher wishes itself to exercise any rights specified in Paragraph 6 for which a
royalty is not otherwise provided, the parties will negotiate the royalty for such
exercise in good faith.**

7.   <u>Transactions with Affiliates</u>

In the event that Publisher licenses its parent company or any subsidiary or affiliate of
Publisher to exercise in the United States or Canada any of the rights listed in paragraph
6 above, such exercise shall be deemed an exercise of such rights by Publisher.
**Publisher will consult Author prior to any such exercise of rights.** In all other
circumstances a license by Publisher to its parent company or any subsidiary or affiliate
of Publisher to exercise any of the above rights shall be deemed an exercise of such rights
by a third party and not an exercise of such rights by Publisher, provided that it is done
pursuant to a license which pays a royalty percentage to Publisher which in Publisher's
reasonable judgment is comparable to that which would be appropriate in a contract
between unaffiliated companies.

8.   <u>Royalty Statements</u>

(a)     Publisher shall provide Author with semi-annual royalty statements showing the
        amounts due to Author hereunder, accompanied by payment of any monies due

less any monies due from Author to Publisher under this or any other agreement between Author and Publisher. Royalty statements shall be provided by April 1 and October 1 of each year for the six-month period ending the preceding December 31st and June 30th, respectively.

(b)     Upon Author's written request, Publisher shall provide to Author the following information as to any particular six month accounting period: (i) the number of copies printed and bound in each printing of each edition; (ii) the date of completion of reprinting and binding of each edition; (iii) the number of free copies distributed; (iv) the number of copies remaindered, destroyed or lost; and (v) the cumulative total sales and disposals.

(c)     Publisher may retain a reasonable reserve against returns in any accounting period. If Author receives an overpayment of royalties resulting from copies of the Work reported sold but subsequently returned, Author shall repay such amounts to Publisher to the extent that Publisher is not able to deduct such amounts from monies due Author at the end of the **third** royalty payment period after the period in which the overpayment is discovered.

(d)     Monies owed by Author to Publisher under any other agreement between Author and Publisher may only be withheld under this Agreement if they result from a breach of Author's warranties, representations or obligations thereunder and must be clearly identified in the royalty statement.

9.    Examination of Publisher's Books and Records

Author, or Author's duly authorized representative, shall have the right, upon at least ten business days' prior written notice, to examine Publisher's books and records insofar as they relate to the Work. Any such examination shall be done during regular business hours and subject to such conditions as Publisher may reasonably prescribe. If the examination uncovers errors, the party in whose favor the error was made shall promptly pay to the other the amount of the error. Any such examination shall be at Author's expense, unless the examination uncovers errors in Publisher's favor aggregating more than 5% of the total sums paid to Author hereunder, in which case Publisher shall pay the reasonable costs of the examination up to the amount of the error determined thereby. Examinations hereunder shall take place not more frequently than once in **twelve months.**

10.    Termination

(a)    Failure to Deliver Material. If Author fails to deliver the Material in final and completed form as described in subparagraph 1(a) hereinabove by the due date, Publisher may terminate this Agreement at any time thereafter upon thirty days written notice, giving Author the opportunity within such period to cure such failure, and upon such termination all money previously paid to Author shall promptly be repaid to Publisher, and there shall be no further claims, liabilities or obligations between the parties concerning this Agreement.

(b)    <u>Extension of Time.</u> Publisher may in its discretion extend or not extend the time for delivery of the Material for any period it deems appropriate. Failure to give a notice of termination for non-delivery shall not be deemed a waiver of the right to serve such a notice at a later time, provided the notice is served before delivery is made.

(c)    <u>Unsatisfactory Material.</u> If the completed Material is not, in Publisher's sole judgment, satisfactory in all respects, Publisher may terminate this Agreement upon written notice. Upon such termination, the parties shall have no further obligations or liabilities to each other, except that any monies paid to Author by Publisher hereunder shall be repaid by Author out of the first proceeds received by Author from subsequent dispositions of rights to the Material, including any adapted or amended versions thereof, or within eighteen months of the date of receipt by Author of such notice, whichever is earlier.

(d)    <u>Acceptance of Material; Revisions.</u> Within 45 days after the date Publisher receives the completed Material from Author (including all necessary permissions required hereunder), Publisher shall determine whether the Material is satisfactory. If the Material as delivered is not satisfactory to Publisher, in Publisher's sole judgment, Publisher may request Author to make revisions, changes or additions (hereinafter collectively "revisions") thereto. Author shall revise the Material in accordance with Publisher's request within a time period **to be mutually agreed by Author and Publisher**. Publisher shall have an additional **45 days** from the date it receives the revised Material to determine whether it is satisfactory. If the Material as revised by Author remains unsatisfactory to Publisher, in its sole judgment, or if Author fails to submit the revisions, or fails to deliver the revised Material, on time, Publisher may terminate this Agreement by written notice in accordance with the terms of subparagraph (c), above. A request for revisions shall not be deemed to constitute acceptance of the Material, nor shall it be deemed to obligate Publisher to accept the revised Material.

(e)    <u>Notice of Acceptance.</u> Publisher shall notify Author of its acceptance of the Material by written notice signed by an authorized signatory of Publisher. Comments, requests for revisions, or other correspondence between Publisher and Author shall not constitute notice of acceptance, nor shall payment of any portion of Author's advance, unless Publisher affirmatively notifies Author on or with such comment, request, correspondence or payment that the Material is accepted.

11.    <u>Publication</u>

(a)    <u>Time and Circumstances of Publication.</u> Publisher shall publish the Work within eighteen months from the date of written notice of acceptance of the complete Material. Publication shall be in such a manner, format and style and at such price or prices as Publisher deems appropriate. **Publisher will consult Author regarding the design concept of the cover and interior of Publisher's editions, but the final decision will be Publisher's.** Advertising, number and destination

of free copies and all details of manufacture, distribution and promotion shall be at the discretion of Publisher.

(b)   Failure to Publish. If Publisher, after acceptance of the complete Material and without just cause, fails to publish, or cause to be published, the Work within the period provided herein, Author may at any time thereafter serve a written notice on Publisher demanding publication. Within 90 days of its receipt of such notice Publisher shall either (i) publish or cause the Work to be published or (ii) revert to Author in writing all rights to the Material granted to Publisher herein (subject to any outstanding licenses, which shall be assigned to Author, if permitted by the terms of such licenses). If Publisher reverts the rights in the Material to Author pursuant to this subparagraph, Author shall retain any advance payments made under this Agreement prior to reversion as damages for Publisher's failure to publish the Work, but Publisher shall have no further obligation to Author with respect to the Material.

(c)   Free Copies. Publisher shall give Author 35 free copies and Agent 15 free copies of Publisher's first edition of the Work upon first publication and shall, at Author's request, make available further copies at a discount of fifty percent (50%) from Publisher's invoice price for Author's own use, but not for resale. **Publisher shall use reasonable efforts to insure that Author and Author's agent receive copies of any further licensed editions of the Work.**

(d)   **Author's Promotional Commitment. Author shall make promotional appearances and otherwise cooperate with Publisher to promote sales of the Work for a period of at least two weeks at the time of initial publication of the Work.**

**In addition, Author agrees that Author shall not make or cooperate in any media appearances (television, radio, print or otherwise), including interviews (other than the *Playboy* interview already granted), prior to publication of the Work without Publisher's prior written approval. If Author makes any such appearances without Publisher's prior written approval, Publisher will have the right to reduce Author's advance by $25,000.00 for each such unauthorized appearance, and to deduct such sum(s) from the portion of the advance otherwise due Author on publication of the Work. Publisher acknowledges that the upcoming Washington Post piece about Author is not subject to the above penalty.**

12.   Warranties and Indemnities

(a)   Warranties. Author represents and warrants that, except as may otherwise be indicated hereinabove, Author is the sole author of the Material; that the Material conforms in all respects to the requirements of this Agreement, is original, has never before been published in whole or in part in any form, is not in the public domain in any country included in the Territory and does not infringe upon any copyright or upon any other proprietary or personal right of any third party; that

the Material contains no matter which is libelous, in violation of any right of privacy, harmful to the user or any third party so as to subject Publisher to liability, or otherwise contrary to law; that Author is the sole and exclusive owner of the rights herein conveyed to Publisher; that Author has not previously assigned, pledged or otherwise encumbered the same; and that Author has full power to enter into this Agreement and to make the grant herein contained.

(b)    Indemnity.  Author shall indemnify and hold Publisher harmless from any losses, damages, expenses (including reasonable attorneys' fees), settlements, recoveries or judgments arising from or related to any claim, action or proceeding based on allegations which, if established, would constitute a breach of any of Author's representations and warranties.  Either party shall promptly notify the other of any claim, action, or proceeding respecting the Work.  Publisher shall defend any such claim, action, or proceeding made against Publisher with counsel of Publisher's selection.  Author shall fully cooperate with Publisher in its conduct of the defense thereof.  Author may elect to participate in the defense thereof at Author's own expense with counsel of Author's selection, but Publisher's counsel shall control the defense of any such claim, action or proceeding.  Publisher shall have the right to settle any such claim, action or proceeding made against Publisher, provided it first consults with Author and seriously considers any objection to settlement which Author may make.  Author and Publisher shall agree in writing on the percentage of the costs of any such settlement which each shall bear.  If the parties are unable to reach such an agreement, Publisher shall retain any remedies available to it based on Author's breach of any warranty or representation made by Author in this Agreement.  Notwithstanding the foregoing, if Author undertakes to hold Publisher harmless from the further costs of defending any such claim, action or proceeding and provides security acceptable to Publisher in Publisher's sole discretion, Publisher shall not settle any such claim, action or proceeding without Author's written consent.  Publisher shall have no obligation to appeal any judgment against Publisher resulting from a claim, action or proceeding respecting the Work.  Nothing herein shall prevent Publisher at any time from settling any claim, action or proceeding against it at its own cost and expense.

(c)    Withholding legal expenses.  In the event of any claim, action or proceeding based on allegations which, if established, would constitute a breach of any of Author's representations and warranties, Publisher shall have the right to withhold from payments due to Author under the terms of this Agreement its reasonable estimate of the costs and damages resulting from any such claim, action or proceeding as security for Author's obligations under this Agreement.  Publisher shall deposit any sums withheld in an interest-bearing account pending disposition of the claim, action or proceeding.  Upon such disposition, the sums withheld and the interest earned thereon will be applied to satisfy Author's obligation to indemnify Publisher, and any balance remaining thereafter shall be remitted to Author promptly after such disposition.  Any sums withheld pursuant to this subparagraph 12(c) shall be released within twelve (12) months if no

suit has been initiated or if in the opinion of the Publisher's counsel the claim has been abandoned.

(e)　Extension of Warranties and Indemnities to Third Parties.  Publisher shall have the right to extend Author's representations, warranties and indemnities to third parties (including licensees of subsidiary rights granted to Publisher herein), and Author shall be liable thereon to the same extent as if such representations, warranties and indemnities were originally made to such third parties by Author.

(f)　Revisions to Reduce Risk of Legal Claims.  If in Publisher's opinion there appears to be a substantial risk of legal claims or of governmental action against the Work, Author will, if Publisher so requests, make revisions in the Material satisfactory to Publisher and Publisher's legal counsel.  If Author refuses or fails to make the requested revisions, Publisher may terminate this Agreement by written notice to Author.  Upon such termination, all money previously paid to Author under this Agreement shall be repaid to Publisher by Author.  If Publisher in its sole discretion determines that the manuscript cannot be made legally satisfactory, or if Author revises the Work but there remains, in the reasonable opinion of Publisher's counsel, a substantial risk of legal claims and/or governmental action against the Work, Publisher may terminate this Agreement by written notice to Author. Upon such termination, all rights granted herein shall revert to Author, subject to all money previously paid to Author under this Agreement being repaid to Publisher out of first proceeds received by Author from subsequent dispositions of rights granted under this Agreement to the Material, including any adapted or amended versions thereof.  In any event, no request for revisions or substantiation shall be deemed to impose on Publisher any obligation of verification, nor shall it affect Author's warranties and indemnities, which shall apply to all Material.

(g)　Survival.  The representations, warranties and indemnities set forth in this Agreement shall survive in the event this Agreement expires or is terminated for any reason.

(h)　**Insurance. Publisher currently maintains media perils insurance and acknowledges that Author is covered by such insurance as an additional named insured with respect to this Work only.**

13.　Competing Works

(a)　During the term hereof, Author shall not publish, or cause or permit to be published, any book on the same or similar subject matter as the Work that would compete directly in the marketplace with sales of the Work.

(b)　Author shall not undertake to write another book for another publisher until the Material is delivered.

14. <u>Copyright</u>

(a)    Publisher shall include in each copy of the Work distributed hereunder a copyright notice in the name of Author in accordance with the United States Copyright Act and the Universal Copyright Convention, as amended. Publisher shall register a claim to copyright in the Work in Author's name with the U.S. Copyright Office within three months of its first publication of the Work. Publisher is permitted, but not obligated, to take steps to secure copyright in other countries in the Territory and to apply in Author's name for any renewal of any copyright. (References to copyright in this Agreement shall include any amendment subsequent to the date hereof to the United States Copyright Act, the copyright laws of other countries in the Territory, and international copyright conventions.)

(b)    Both parties agree to execute at any time any documents necessary or appropriate to register a claim to copyright or otherwise to secure and maintain copyright in accordance with the provisions of this Agreement. Publisher may record this Agreement with the U.S. Copyright Office. Author hereby appoints Publisher to be Author's attorney-in-fact to execute and to file any and all documents necessary to register a claim to copyright in the Material and to record in the U.S. Copyright Office the assignment of exclusive rights to Publisher in this Agreement.

(c)    Any contents for the Work, other than Material, that Publisher furnishes at its own expense may be treated as a separate copyrighted work if Publisher deems it appropriate.

(d)    Author shall, in connection with any disposition of rights reserved by Author hereunder, require the licensee or grantee of such rights to take all necessary steps to protect the copyright in the Work. Author shall promptly notify Publisher if Author makes any disposition of such rights that would permit publication of the Work or any portion of the Work that exceeds 7,500 words prior to the publication of the complete Work under this Agreement and shall promptly deliver to Publisher two copies of any such prior publication. At Publisher's request, Author shall also deliver to Publisher assignments in legally recordable form to permit a claim to copyright in the Work to be registered as provided herein.

(e)    Each copy of the Audio Work will carry the proper copyright notice as follows: (P) 20** Hyperion.
** (year in which the Recording is initially distributed as an Audio Work hereunder) as well as the © copyright notice for the Work.

Publisher shall be the absolute and unqualified owner of the master recording of the Audio Work ("Recording") and Author shall have no right, title, or interest therein. Publisher shall have the exclusive right, title and interest in and to the copyright and renewals and extensions of copyright, and other protection, for the

performance embodied in the Recording, and Author hereby agrees to execute and deliver such instruments and documents as Publisher may reasonably require to evidence, establish, maintain or defend its rights in or to the Recording and such copyright. Notwithstanding the foregoing, Publisher agrees it may not exploit the copyright except as specifically provided for herein and may not authorize others to do so or provide the original or any copy of the Recording to others except in connection with Publisher's own exercise of the limited rights granted to Publisher hereunder.

15.    Third-Party Infringement

Publisher may take any legal action it deems advisable to restrain any actual or threatened infringement of copyright in the Work or to seek damages therefor, but shall not be liable to Author for failure to take such legal action. Publisher may make Author a co-plaintiff in any litigation Publisher commences to protect the copyright. Publisher shall bear the entire expense of such litigation, and any recovery therefrom shall be applied first to reimburse Publisher for its expense, including reasonable attorneys' fees. The balance, if any, shall be allocated one-half to Author, provided that the recovery is due in material respect to infringement of Author's rights in the Material, and one-half to Publisher. If Publisher does not bring an action relating to infringement of the Material, Author may do so in Author's own name and at Author's own cost and expense. Money damages recovered by Author from such infringement of the material shall be applied first to reimburse Author for Author's expenses, including reasonable attorneys' fees, and the balance shall be allocated one-half to Author and one-half to Publisher in the same manner as recoveries in an action brought by Publisher.

16.    Option

(a)    Next Manuscript

Author agrees not to submit the manuscript for Author's next book to any other publisher until such manuscript has first been submitted to Publisher, and Publisher has had 90 days from the later of:

(i)    the time of submission of such manuscript to Publisher; or

(ii)    the date on which the Work is published

to advise Author whether it wishes to publish the book and to negotiate a publication agreement with Author. If Publisher fails to so advise Author, or the parties fail to reach agreement within 90 days, Author may submit the manuscript to third parties.

(b)    Reserved Rights

All rights to the Material not granted to Publisher herein are reserved by Author.

17. <u>Out-of-Print Termination</u>

(a)    If the Work is out-of-print as defined in subparagraph (b) of this paragraph, Author may serve Publisher with a written notice requesting reversion of the rights granted hereunder.  Publisher shall, within six months of receiving such notice, do one of the following:  (i) declare in writing its intention to reissue an edition of the Work within six months; or (ii) enter into a license providing for the publication in the United States of a new edition of the Work within six months; or (iii) revert in writing to Author the rights granted to Publisher herein.  If Publisher declares its intention to reissue the Work and does not do so within nine (9) months from the date of receiving Author's request for reversion, all rights granted to Publisher herein shall automatically revert to Author.  **In the instance where Publisher fails to respond to a notice from Author under the terms of this Paragraph 17(a), Author shall send Publisher an additional notice via certified mail, return receipt requested, to the attention of the publisher of Hyperion, and to Publisher's Counsel as noted in Paragraph 26 hereunder, and if Publisher fails to respond within a further 60 days from its receipt of said second notice, then Author may terminate this agreement at any time thereafter upon written notice to Publisher.**  Any reversion of rights to Author under this paragraph shall be subject to any outstanding licenses to third parties entered into prior to the date of the reversion and the rights of Author and Publisher to participate in the proceeds therefrom.

(b)    For purposes of this Agreement, the Work shall be deemed out-of-print if, after two years from the date of first publication, no edition of the Work is available **in the United States** from Publisher or a licensee of Publisher **in a full-length edition through regular trade channels,** and there is no license in effect which provides for the publication or reissue of an edition of the Work in the United States within 18 months from the date of the notice, **or if aggregate sales of the Work in all editions are less than 300 copies in two consecutive accounting periods**

18.    <u>Retention of Manuscript Copy</u>

Author shall retain at least one copy of the manuscript for the Work and any other Material submitted to Publisher.  Publisher shall, upon Author's written request made within a year after first publication of the Work, return to Author the copy of the manuscript used for typesetting.  Publisher shall not be required to retain such manuscript thereafter.  Publisher shall not be responsible for the loss of or damage to any Material submitted by Author, except in the event of its gross negligence.

19.    <u>Use of Author's Name and Likeness</u>

Author grants to Publisher the right to use Author's name, **approved likeness and/or approved** biographical data on any editions of the Work or portions thereof published by Publisher and in any advertising, publicity or promotion for the Work.  Author further agrees that Publisher may extend this right to any licensee or purchaser of any of the

rights granted to Publisher herein. Author agrees to, at Author's expense, furnish Publisher with two (2) copies of a photograph suitable for use on the jacket of the Work as well as in all other publicity and promotion of the Work. Author, at Author's expense, shall be responsible for clearing any permissions associated with such photographs and for providing Publisher with a copy of the executed permission agreement and shall provide a credit line for same.

20.  Taxes and Other Charges

(a)  If Publisher is required by law to withhold and pay to any U.S. or foreign government taxing authority any portion of amounts due Author hereunder, such payments shall be deducted from the net amounts due Author hereunder.

(b)  If any foreign taxes, bank charges or agents' commissions are imposed on any payments due Publisher from the exercise of any right granted herein, the appropriate allocation of proceeds between Publisher and Author from the exercise of such right shall be made on net amounts received after such taxes, charges and commissions have been paid.

21.  Force Majeure

The failure of Publisher to publish or reissue the Work or otherwise perform its obligations under this Agreement shall not be deemed to be a violation of this Agreement or give rise to any right of termination or reversion if such failure arises from a "force majeure." Publisher's time to publish, reissue or otherwise to perform its obligations shall be extended for a period equal to the period of delay caused by the force majeure. For purposes of this Agreement, "force majeure" includes, without limitation, acts of God, fires, national disasters, restrictions of governmental agencies, labor disputes or inability to obtain the materials necessary for printing, or any other circumstances beyond Publisher's reasonable control.

22.  Bankruptcy

In the event that Publisher (a) files a petition in bankruptcy, or (b) is adjudicated bankrupt by a court of competent jurisdiction; or (c) completely liquidates its business, this Agreement shall terminate automatically, and all rights granted to Publisher herein shall revert to Author.

23.  Governing Law

This Agreement shall in all respects be governed by and interpreted in accordance with the substantive laws of the State of New York (without regard to choice of law rules) applicable to contracts made and to be performed in New York.

Cutler - The Washingtonienne.doc

24. <u>Assignment of this Agreement</u>

This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators and, subject as follows, assigns of Author and the successors and, subject as follows, assigns of Publisher. Neither party hereto may assign this Agreement without the prior written approval of the other. The sale of substantially all of the assets of Publisher, or its acquisition by or merger into another company, shall not be deemed an assignment of this Agreement by Publisher, nor shall an assignment to Publisher's parent company or any subsidiary or affiliate thereof be deemed such an assignment. Any assignment in violation of this paragraph shall be void.

25. <u>Headings</u>

The headings in this Agreement are for convenience only and are without substantive effect.

26. <u>Notices</u>

All notices and payments required or permitted by this Agreement shall be in writing and sent by regular first-class mail, except that any notices of breach, reversion, demand for publication or termination shall be sent by certified or registered mail, return receipt requested, to the parties at their addresses recited at the beginning of this Agreement (or to such other addresses as either party shall notify the other in writing). Any notice to Publisher shall be sent to the attention of "Publisher, Adult Publishing." Any notice to Publisher's Counsel shall be sent to the attention of Kenneth E. Newman, Senior Vice President, Eastern Regional Counsel, 77 West 66th Street, 15th floor, New York, NY 10023.

27. <u>Agency</u>

Author hereby appoints Carlisle & Company, LLC, 260 West 39th Street, 6th floor, New York, NY 10018, as the sole and exclusive agent with respect to all rights in and to the Work. Such agency is coupled with an interest. The Author authorizes and directs Publisher to make all payments due or to become due to the Author, hereunder and with respect to the sale, lease, license or other disposition of any rights therein and thereto, to and in the name of Carlisle & Company, LLC, and to accept the receipt of said agent as full evidence and satisfaction of such payments. As the sole and exclusive agent, said agent is authorized to negotiate for Author throughout the world as to the disposal of all other right in and to the Work. The agent is further empowered to engage sub-agents. In consideration for services rendered, said agent is entitled to receive as its commission a sum equal to fifteen percent (15%) of all monies payable to the Author hereunder and/or by reason of such sale, lease, license or other disposition form all other rights in and to the Work except foreign sales, where said agent shall receive as its commission a sum equal to twenty percent (20%) plus out-of-pocket expenses, prior to deductions from or charges against such monies for any reason whatsoever. Such commission may also be increased to twenty percent (20%) with respect to the sale, lease, license or other

disposition of any non-print publication ancillary and subsidiary rights to the Work where the agent engages a sub-agent. The agent's rights hereunder may not revoked by the Author without said agent's prior written consent. The provisions of this paragraph will survive the expiration of this agreement.

28.   Entire Understanding

This Agreement contains the entire understanding of Author and Publisher and supersedes all prior and contemporaneous negotiations, understandings and agreements between them concerning the Work. No waiver or modification of any of the terms hereof shall be valid unless made in writing and signed by both parties. No waiver of any breach shall be deemed a waiver of any subsequent breach.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date(s) below indicated.

Hyperion, an imprint of Buena Vista Books, Inc.

By: _____
       Robert S. Miller, President

Date: _____

_____
Jessica Cutler

Date: _____