UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**ROBERT STEINBUCH**                                                    **PLAINTIFF**

v.              Case No.: 4:06-CV-0000 620-WRW

**JESSICA CUTLER,
HYPERION BOOKS,
DISNEY PUBLISHING WORLDWIDE,
HOME BOX OFFICE and TIME WARNER           DEFENDANTS**

BRIEF IN SUPPORT OF RULE 12(b)(2)
MOTION TO DISMISS SEPARATE DEFENDANT
JESSICA CUTLER FOR LACK OF PERSONAL JURISDICTION

I.   Background:

This is the second of two lawsuits the plaintiff has filed against separate defendant Jessica Cutler, both arising out of an alleged intimate relationship between Mr. Steinbuch and Ms. Cutler while the two worked together as staffers for a United States Senator in Washington D.C. in May, 2004. About a year after their relationship ended, Mr. Steinbuch sued Ms. Cutler in the United States District Court for the District of Columbia on May 16, 2005, asserting claims for invasion of privacy and intentional infliction of emotional distress allegedly based on Ms. Cutler's revelation of details of her relationship with the plaintiff on an internet site, *i.e.,* weblog or "Blog," and in a book Ms. Cutler wrote. *Steinbuch v.*

*Cutler,* Case No. 01:05-CV-00970-PLF (the ("D.C. Lawsuit").[1]  According to allegations in the complaint filed in the D.C. Lawsuit, the book, titled *The Washingtonienne* (the "Book"), is based on Ms. Cutler's real-life experiences while she worked in Washington D.C., including her sexual relationship with the plaintiff.  In the D.C. Lawsuit, Steinbuch alleges that:

> Cutler signed a book contract, receiving a $300,000 advance, with Hyperion Press, a division of the Disney Corporation, to write a thinly disguised novel, of the roman a clef genre, in which the contents of her public blog, including her relationship with Plaintiff, are described in graphic detail.

Exhibit B, ¶ 27.  Compare that allegation to paragraph 17 of the complaint in the this case, which states, in part, that:

> Cutler signed a book contract, receiving a $300,000 advance, with Hyperion Press, a division of the Disney Publishing Worldwide, to write a thinly disguised novel, of the roman a clef genre, in which the contents of her public blog, including her relationship with Plaintiff, are described in graphic detail.

First Amended Complaint, ¶¶ 17-18.

The plaintiff makes the same claims against Ms. Cutler in the D.C. Lawsuit, *i.e.* invasion of privacy and intentional infliction of emotional distress, supported by the same factual allegations, *i.e.*, revelations about the plaintiff's sexual proclivities on the Cutler Blog and in the Book, as he does in this lawsuit.  See Exhibit B and First Amended Complaint, Document 4, ¶¶ 17 -18.

---

[1] A copy of the complaint in the District of Columbia lawsuit is attached to the Cutler Motion to Dismiss as Exhibit B.

Upon information and belief, at the time the Arkansas lawsuit was filed, only a handful of copies of the book written by Ms. Cutler had been sold in Arkansas.

The plaintiff's Arkansas lawsuit alleges that, "the harm giving rise to the claims . . . are in Arkansas." (First Am. Compl. ¶ 9) In his D.C. Complaint, filed on May 16, 2005, however, the plaintiff stated that "[a]t all times germane to this litigation he was an attorney employed on the staff of [a] United States Senator . . . with an office in the Dirksen Senate Office Building in Washington, D.C." Exhibit B, ¶ 2.

In the plaintiff's original Arkansas complaint, he alleges that the Book was published, "on or about June 15, 2005,"[2] and that, "at this time, Plaintiff was a resident of Maryland. . . . Plaintiff later moved to and now resides in Little Rock, Arkansas." Original Complaint, ¶ 17. Thus, the plaintiff admits that he did not become a resident of Arkansas until after the Book was published. Upon information and belief, the plaintiff did not have any significant contacts with the State of Arkansas until after the publication of the Book and after he moved to Arkansas.

The plaintiff's contacts with the State of Arkansas at the time of the Book's publication were attenuated, but Ms. Cutler had – and has – *no contacts* with the State. She has never lived in any place other than California, New York, and the

---

[2] The publication date of the Book was June 1, 2005, but for purposes of the Motion to Dismiss, Ms. Cutler will assume a publication date of June 15, 2006.

3

District of Columbia.  (Exhibit A)  She has never lived in, or even visited, the State of Arkansas.  (Exhibit A)  Since the filing of this lawsuit, she has resided exclusively in the State of New York.  (Exhibit A)  Ms. Cutler is not licensed to do business in Arkansas.  (Exhibit A)  She does not have any bank accounts or property in the State.  (Exhibit A)  She has never incurred or paid taxes in Arkansas.  (Exhibit A)  She is not listed in any Arkansas telephone directory.  (Exhibit A)  Ms. Cutler does not have a business, an office, a mailing address, or any other presence in the State of Arkansas.  (Exhibit A)  The plaintiff has not contradicted any of these facts in his Complaint or First Amended Complaint.  (Compl. *passim*; First Am. Comp. *passim*.)

As to the Book which is the subject of this litigation, Ms. Cutler is the author, but has no control over its distribution or marketing.  She signed a book contract with Hyperion, an Imprint of Buena Vista Books, Inc. ("Buena Vista Books"), the corporation that published the Book.  Ms. Cutler does not have the authority to decide into which states it is sold.[3]   In short, Ms. Cutler is solely the creator of intellectual property that has been licensed and distributed by others.

II.   Legal Analysis:

This Court's exercise of *in personam* jurisdiction over the Ms. Cutler would be a tacit endorsement of the plaintiff's blatant forum shopping and bent for filing duplicative lawsuits.  More importantly, it would infringe improperly upon Ms.

---

[3]  A copy of the Book contract between Ms. Cutler and Buena Vista Books is attached to the Motion as Exhibit C.

Cutler's constitutional right to due process. At the time she signed the contract with Buena Vista Books and wrote the Book, Ms. Cutler never could have reasonably anticipated that the plaintiff would decide to relocate to a distant state and file suit against her based, presumably, on an attenuated stream-of-commerce jurisdictional theory, a theory soundly rejected in Eighth Circuit precedent. The proper jurisdiction for plaintiffs' claims against Ms. Cutler is the District of Columbia, where the first Steinbuch lawsuit is pending. Due process demands that the plaintiff's claims against the defendant Ms. Cutler be dismissed for lack of personal jurisdiction over her.

    A. <u>The plaintiff shoulders the burden of proving personal jurisdiction over Ms. Cutler.</u>

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must make a *prima facie* showing that jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996); *Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Once a defendant challenges the court's exercise of personal jurisdiction over her, the plaintiff shoulders the burden of establishing personal jurisdiction with specific facts as shown by testimony, affidavits, or other documentation. *Dever v. Hentzen Coatings*, 380 F.3d 1070, 1074 (8th Cir. 2004). Pleadings alone are not enough. *Id.* at 1072.

A federal court may assume personal jurisdiction to the extent permitted by the long-arm statute of the forum state. *Id.* at 1073. Because Arkansas confers

personal jurisdiction to the fullest constitutional extent, the court's inquiry in this case will focus on the limits imposed by the due process clause of the United States Constitution.  ARK. CODE ANN. § 16-4-101(B) (Repl. 1999).

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  On appeal, questions of personal jurisdiction are reviewed *de novo*.  *Dever*, 380 F.3d at 1072.

Taking all of the plaintiff's allegations in the First Amended Complaint at face value, he fails to make a *prima facie* showing that Ms. Cutler has had minimum contacts with the State of Arkansas to support a finding of personal jurisdiction, or that maintenance of this lawsuit would not offend traditional notions of fair play and substantial justice.  Because Ms. Cutler has raised the issue of lack of personal jurisdiction, the plaintiff must now go a step further and show that Ms. Cutler has the requisite minimum contact with the State of Arkansas to support personal jurisdiction.  But as her affidavit demonstrates, Ms. Cutler has no contacts with Arkansas and, therefore, cannot fairly or justly be haled into the courts of this State.  (Exhibit A)  There are no specific facts with which the plaintiff can rebut this showing.  Mr. Steinbuch cannot meet his burden of showing that personal jurisdiction exists over Jessica Cutler.

### B.  Ms. Cutler does not have sufficient minimum contacts with Arkansas to support a finding of personal jurisdiction.

The plaintiff's unilateral act of moving to Arkansas, after the publication of the Book, coupled with his apparent stream-of-commerce theory of personal jurisdiction fall far short of the constitutional benchmark protecting citizens from being haled into a distant jurisdiction with which they have no contacts.  Ms. Cutler has absolutely no contacts with the State of Arkansas.  A bedrock rule of personal jurisdiction is that the mere "unilateral activity of those who claim some relationship with a nonresident defendant" is not enough to satisfy the demands of Fourteenth Amendment due process.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Guinness Import Co.*, 153 F.3d at 614.  For a finding of minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson*, 357 U.S. at 253.  The defendant's conduct and connection with the forum state must be strong enough that she "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.  "Purposefully availing" means that the defendant must have had some contact with the forum state that is more than random, fortuitous, or attenuated.  *Guinness Import Co.*, 153 F.3d at 614.  It is difficult to conjure a situation more random, fortuitous, or attenuated than a plaintiff's unilateral act of moving – with his alleged harm in tow – from

7

Maryland to Arkansas, a state where Ms. Cutler has never even visited, and where upon information and belief only a few copies of her Book have been sold.

> 1.  *Ms. Cutler is not subject to this Court's general personal jurisdiction.*

The United States Supreme Court has recognized two methods for establishing minimum contacts—general jurisdiction and specific jurisdiction. *Dever*, 380 F.3d at 1073 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)).  When personal jurisdiction is "general," a defendant must have "continuous and systematic" contacts with the forum state such that a court may adjudicate any cause of action brought against the person. *Id.*; *Burlington Indus., Inc.*, 97 F.3d at 1103.  Specific jurisdiction, on the other hand, "is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Dever*, 380 F.3d at 1073.

Jessica Cutler has had no contacts with this State at all, much less contacts that are "continuous and systematic."  When the only contacts between a defendant and the forum state are related to the dispute that gave rise to the lawsuit, those contacts are insufficient to subject the defendant to general jurisdiction within that state. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994).  As Ms. Cutler has sworn in her affidavit, she has never resided in, or even visited, the State of Arkansas.  (Exhibit A)  She owns no property, has no tax obligations, and has no business presence in the State of

Arkansas. (Exhibit A) There is no basis by which this Court can exercise general jurisdiction over Ms. Cutler.

### 2. Ms. Cutler is not subject to specific jurisdiction in this lawsuit.

In judging minimum contacts for specific jurisdiction, courts focus on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984); *Guinness Import Co.*, 153 F.3d at 614. Due process is satisfied only if the non-resident defendant has "*purposely directed its activities at forum residents*, and the litigation arises out of, or relating to, those activities." *Burlington Indus., Inc.*, 97 F.3d at 1103 (emphasis added). The unilateral activities of a third party are irrelevant for the purposes of minimum contacts— even when that other party is a co-defendant. *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 ("Each defendant's contacts with the forum State must be assessed individually."); *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) (holding that defendant's knowledge that co-defendant would bring product into a state was not a "purposeful availment").

The critical inquiry is whether the defendant has conducted activities *within* the state or has directed its activities *at* the forum state. *Guinness Import Co.*, 153 F.3d at 614-15. The relationship among Ms. Cutler, the State of Arkansas, and this litigation is fairly characterized as random, attenuated, and fortuitous. Neither Mr. Steinbuch's unilateral act of moving to Arkansas after the alleged tortious conduct occurred, nor an attenuated stream-of-commerce theory can change this basic fact.

9

Due process does not allow a plaintiff to move with his alleged injuries into a new state, file suit, and use that fact to bootstrap personal jurisdiction over a nonresident defendant. The Supreme Court has long since rejected the notion that foreseeability, absent other affiliating circumstances, is enough to give rise to personal jurisdiction. *World-Wide Volkswagen Corp.*, 444 U.S. at 296-97. Orderly administration of justice requires that a defendant have engaged in conduct in a forum state such that she should reasonably anticipate being haled into court there. *Id.* at 297. For example, even though it is foreseeable that a person may take a defective automobile into another state, that possibility is not the type of minimum contact required before a court can exercise personal jurisdiction over a nonresident defendant. *Id.* at 298. Similarly, it is bizarre to contend that Ms. Cutler could have foreseen that a former paramour would quit his job in Washington, D.C., and move to Little Rock, Arkansas, where he had no apparent contacts, more than a year after their affair ended. (First Am. Compl. ¶¶ 6, 10-12.) There are no allegations in the First Amended Complaint that the actions giving rise this lawsuit *took place in*, or were *directed at*, the State of Arkansas. *Cf. Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987) ("[T]he actions giving rise to this lawsuit took place in Maryland, not in South Dakota."). Mr. Steinbuch's unexpected and unforeseeable move to Little Rock, Arkansas, with no other affiliating circumstances, is a unilateral activity that cannot confer personal jurisdiction over Jessica Cutler in this State.

10

It is irrelevant to this analysis that the Book may have appeared in Arkansas before Mr. Steinbuch relocated here. Publication in a jurisdiction, by itself, is not enough to give rise to personal jurisdiction. In *Calder v. Jones*, the United States Supreme Court addressed the circumstances under which a work published in Florida could give rise to personal jurisdiction in California, even though the writer and editor of the story has no other contact with the state:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. *The article was drawn from California sources,* and the brunt of the harm, in terms of both the respondent's emotional distress and the injury to her professional reputation, was suffered in California. *In sum, California is the focal point of both the story and of the harm suffered. . . . [Petitioner] knew that the brunt of [respondent's] injury would be felt by respondent in the State in which she lives and works* and in which the *National Enquirer* has its largest circulation.

*Calder*, 465 U.S. at 788-89 (emphasis added). If Shirley Jones, the respondent in that case, had later moved to Idaho and filed suit there, her unilateral move would not have precipitously conferred Idaho courts with personal jurisdiction over the publisher.

Under the *Calder* test, a nonresident defendant author is deemed to have sufficient minimum contacts only if: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum state, such that the forum state was the focal point of the tortious activity; and (3) the defendant expressly aimed the tortious conduct at the forum, such that the forum state was the focal point of the tortious activity. *Calder*, 465 U.S. at 788-89; see also

*Church of Scientology of California v. Adams*, 584 F.2d 893 (9th Cir. 1978) (holding that when events in the offending publication bear no relation to the forum state, that factor weighs against personal jurisdiction.)

In contrast to the situation in *Calder*, Ms. Cutler's Book allegedly concerned the Washington, D.C. activities of a Maryland resident. (Compl. ¶ 2; First Am. Compl. ¶¶ 10-21.) It allegedly disclosed private facts regarding a lawyer whose career was centered in Washington, D.C. If allegations in the plaintiff's D.C. Lawsuit are to be believed, "[a]t all times germane to this litigation," he was a "resident of Maryland" and worked "in the Dirksen Senate Office Building in Washington D.C." (Exhibit B, ¶ 2) Nothing in the plaintiff's First Amended Complaint indicates that the basis of the alleged harm occurred in Arkansas.

According to allegations in his D.C. Lawsuit, the brunt of the harm occurred in the Washington, D.C., area much earlier than the publication of the Book. (Exhibit B, ¶ 17) Clearly, Arkansas is not the "focal point" of both the story and the harm allegedly suffered. Jurisdiction over Ms. Cutler is therefore not proper in Arkansas.

Another obvious distinction between the plaintiff's claims against Ms. Cutler in this case and the claims in *Calder* is that Ms. Cutler is an author and not a publisher. "[A] publisher's contacts must be evaluated separately from an author's contacts. Jurisdiction does not necessarily exist over an author even where it does exist over a publisher." *Bochan v. La Fontaine*, 68 F. Supp.2d 692,

12

699 (E.D. Va. 1999). In *Bochan*, the trial court aptly noted that "cases finding jurisdiction over an author on the basis of nationally distributed books generally… have additional contacts beyond the mere publication of the book." *Id.* at 699 n.25; see also *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir., 1996) (finding no personal jurisdiction in D.C. over author of article published by separate defendant because author wrote and delivered the article to the publisher outside the District of Columbia); *Insull v. New York World-Telegram Corp.*, 172 F. Supp. 615 (D.C. Ill. 1959) (holding that nonresident authors of books containing alleged libelous material distributed by corporate publishers in Illinois could not be subjected to service merely because they had authored books distributed in Illinois by their publishers).

Furthermore, an insignificant number of copies of the Book were sold in Arkansas. Ms. Cutler could not reasonably have expected or known that Mr. Steinbuch would feel the impact of her book in Arkansas. The Eighth Circuit has soundly rejected the steam-of-commerce theory as proper support for personal jurisdiction over a nonresident defendant. "Placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum state." *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990); accord *Dever*, 380 F.3d at 1075; *Guinness Import Co.*, 153 F.3d at 615. It is well established that when a person releases a product into the stream of commerce, the activity is not directed *at* the state unless the person exercises some control over the product to place it into the

13

state. *See, e.g., World-Wide Volkswagen Corp.*, 444 U.S. at 299 ("[T]he fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them."); *Guinness Import Co.*, 153 F.3d at 614-15. Where a defendant exercises no direction or control over a product's entry into a state, there is no contact for the purposes of personal jurisdiction. *Guinness Import Co.*, 153 F.3d at 614-15. After agreeing to have her Book published, Ms. Cutler had no control over how and where the Book would be marketed and sold. (Exhibit C) Because Ms. Cutler has done nothing more than allow her intellectual property to be placed into the stream of commerce, she has not purposefully directed activities at this State where a small number of books were sold. She cannot be held subject to personal jurisdiction on that basis alone.

By writing a book and allowing it to be published and sold by others, Ms. Cutler has not sought the protection of Arkansas law, and cannot reasonably be expected to be haled into court here. Due process does not allow a plaintiff to treat an article of commerce as an agent for service of process. *World-Wide Volkswagen Corp.*, 444 U.S. at 296. Producing a work of intellectual property, then allowing it to be licensed or distributed in various media, is not sufficient contact to give rise to specific jurisdiction. *Gilmer v. Buena Vista Home Video, Inc.*, 939 F. Supp. 655, 674 (W.D. Ark. 1996). Otherwise, creative persons would be subject to personal jurisdiction in each and every state, contrary to the requirement that a defendant have purposefully availed herself of the privilege of

doing business in the forum state. *Id.* A finding that Ms. Cutler can be sued in Arkansas would mean that she can be sued in any state where her Book has appeared, even though she has played no part in directing her Book into that state. Ms. Cutler is not subject to personal jurisdiction in the State of Arkansas. This Court should dismiss the plaintiff's complaint against her.

    C.    <u>Exercising personal jurisdiction would offend traditional notions of fair play and substantial justice</u>.

In addition to the requirement that a nonresident defendant have minimum contacts with a forum state, courts also must find that the exercise of personal jurisdiction would comport with "fair play and substantial justice." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). The Eighth Circuit has instructed courts to consider five factors in making this determination: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for the parties; and (5) the convenience of the parties. *E.g.*, *Dever*, 380 F.3d at 1073-74. The first three factors are given more significant weight. *Id.* at 1074. The third factor is used to distinguish whether jurisdiction is specific or general. See *Digi-Tel Holdings, Inc.*, 89 F.3d at 523 n.4. Because the previous section of this brief focused extensively on the third factor, this section will discuss the other factors with respect to the fairness and justness of exercising personal jurisdiction.

15

*1. Ms. Cutler's contacts with Arkansas are non-existent.*

It is difficult to discuss "the nature and quality" of Ms. Cutler's contacts with Arkansas because she has none. She has never been inside the state. (Exhibit A, ¶ 4.) She is not registered to do business in Arkansas, does not own any property in Arkansas, and does not have any bank accounts in Arkansas. (Exhibit A, ¶ 4.) In fact, the only "contact" she has with this State is the presence of a few copies of the Book she wrote, but she had no control over the distribution of the Book in Arkansas. As such, this Court's exercise of personal jurisdiction over her would be manifestly unfair and unjust.

*2. Arkansas has little interest in the outcome of this litigation.*

Virtually all events giving rise to this lawsuit occurred in the State of Maryland and the District of Columbia, as evidenced by the facts alleged in the D.C. Lawsuit. See also First Am. Compl. ¶¶ 10-21. Few copies of the Book have been sold in the State of Arkansas. Most of the press stories about this lawsuit have been written and published by media outlets in New York and Washington, D.C., as well as the Internet "blogosphere." See Exhibit B, ¶ 19 ("The contents of the Cutler blog . . . [were] repeated through other internet sites, through numerous mainstream newspapers and tabloid publications published in the United States and abroad . . . including stories published or broadcast by such mass media outlets [as] *The Washington Post, The New York Times,* the Cable News Network,

16

Fox Television News, *The Scotsman, The Guardian, The India Times, The New York Post, The National Enquirer,* and *The Star.*")

   While Arkansas has some interest in providing a forum for its residents, its interest in this case is not compelling. It is difficult to discern what interest the State of Arkansas has in providing the plaintiff with a second forum for a duplicative lawsuit concerning conduct that occurred outside the State and prior to his becoming an Arkansas resident. Moreover, whatever negligible interest Arkansas may have in providing a forum for its newly acquired resident does not overcome Ms. Cutler's right to due process and her obvious lack of minimum contacts with Arkansas. *Digi-Tel Holdings, Inc.*, 89 F.3d at 525.

   3. *Litigation in the State of Arkansas is not convenient.*

   Litigation in Arkansas is not convenient for the parties or the witnesses. The plaintiff, Mr. Steinbuch, is already conducting parallel (and duplicative) litigation against Ms. Cutler in the District of Columbia, a forum of his choosing that is, presumably, convenient for him. He could have added claims easily to that lawsuit. FED. R. CIV. P. 18(a); (First Am. Compl. ¶ 14.) Mr. Steinbuch's only attorney of record has offices in Clearwater, Florida, and Bedminster, New Jersey, both of which are considerably closer to New York and the District of Columbia than to Arkansas. Certainly, this litigation is inconvenient and burdensome for Ms. Cutler, who resides in New York about 1,200 miles away and has never been to Arkansas. (Exhibit A, ¶¶ 1, 4.) Ms. Cutler is a private person, not a sophisticated commercial entity. *Cf. Burlington Indus., Inc.*, 97 F.3d at 1103.

Thus, the "convenience" factor clearly works against the exercise of personal jurisdiction over Ms. Cutler.

Personal jurisdiction is not a means to get "two bites at the apple." Nor is it a way for litigious[4] persons to engage in forum-shopping. The result of the five-factor jurisdictional analysis is that this Court does not have personal jurisdiction over Ms. Cutler. Her Motion to Dismiss should be granted.

## CONCLUSION

For all of these reasons, separate defendant Jessica Cutler respectfully requests that this Court grant her Motion to Dismiss.

        WILLIAMS & ANDERSON PLC
        Twenty-Second Floor
        111 Center Street
        Little Rock, Arkansas 72201
        (501) 372-0800

        By: ___/s/_Beth Deere_____
            Philip S. Anderson, Ark. Bar # 60001
            Jess Askew III, Ark. Bar # 86005
            Beth Deere, Ark. Bar # 86050
            Clayborne S. Stone, Ark. Bar # 2003102

        *Attorneys for Defendant Jessica Cutler*

---

[4] In addition to the D.C. Lawsuit against Ms. Cutler, plaintiff has at least one more suit, for defamation, pending in the United States District Court for the District of Columbia. See *Steinbuch v. Kapell*, Case No. 1:04-cv-00188-RMC-AK.

## CERTIFICATE OF SERVICE

I certify that on this 18th day of August, 2006, I served a copy of the foregoing document via the Court's ECF/Pacer electronic filing system upon the following persons:

Jonathan Rosen, Esquire
1645 Lamington Road
Bedminster, NJ 07921
*Attorney for Plaintiff*

Claire Hancock, Esquire
M.N. Norton, Esquire
Gary D. Marts, Esquire
Wright, Lindsey & Jennings
200 West Capitol Avenue, #2200
Little Rock, AR  72201
*Attorneys for Separate Defendants*
*Time Warner and Home Box Office*

        __/s/ Beth Deere_____
        Beth Deere