UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**ROBERT STEINBUCH**                                           **PLAINTIFF**

v.                        Case No.: 4:06-CV-0000 620-WRW

**JESSICA CUTLER,**
**HYPERION BOOKS,**
**DISNEY PUBLISHING WORLDWIDE,**
**HOME BOX OFFICE and TIME WARNER**                **DEFENDANTS**

**BRIEF IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS**
**SEPARATE DEFENDANT HYPERION, AN IMPRINT OF**
**<u>BUENA VISTA BOOKS, INC.</u>**

I.     <u>Introduction</u>

Plaintiff Robert Steinbuch initiated this proceeding on June 15, 2006, claiming causes of action for invasion of privacy and intentional infliction of emotional distress.  The plaintiff's claims arise out of his alleged intimate relationship with separate defendant Jessica Cutler, the author of *The Washingtonienne* (the "Book"), which plaintiff alleges recounts Ms. Cutler's life in Washington D.C., including her sexual relationship with the plaintiff.

Hyperion, an imprint of Buena Vista Books, Inc. ("BVB") is named as a separate defendant in this action solely for its role as publisher of the Book.  BVB should be dismissed from this case because this Court lacks personal jurisdiction over it.  As set forth below, plaintiff will be unable to prove that BVB has contacts

with the State of Arkansas to warrant a finding of either general or specific personal jurisdiction.

II.    Analysis

    A.    Plaintiff bears the burden of proving personal jurisdiction.

To survive this motion to dismiss for lack of personal jurisdiction, the plaintiff must have stated sufficient facts in his complaint to support a reasonable inference that BVB can be subjected to jurisdiction within the State of Arkansas. *Burlington Indus., Inc. v. Maples Indus., Inc*, 97 F.3d 1100, 1102 (8th Cir. 1996). Under the law of the Eighth Circuit, the plaintiff bears the burden of establishing that BVB is subject to this Court's jurisdiction once the issue is contested. See, e.g., *First Nat'l Bank of Lewisville v. First Nat'l Bank of Clinton*, 258 F.3d 727, 729 (8th Cir. 2001). Plaintiff cannot meet his burden in this case.

This Court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of Arkansas and by the due process clause of the Fourteenth Amendment. *Morris v. Barbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir.1991). Because the long-arm statute of Arkansas confers jurisdiction over foreign corporations to the fullest constitutional extent, *Davis v. St. John's Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002), the Court's inquiry is limited to whether the exercise of its personal jurisdiction over BVB comports with due process. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Burlington Indus.*, 97 F.3d at 1102 (quoting *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).  In order to comport with due process, personal jurisdiction requires that there be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *First Nat'l Bank of Lewisville,* 258 F.3d at 729 (quoting *Hanson v. Denckla,* 377 U.S. 235, 253 (1958)).

Because BVB lacks sufficient contacts with the State of Arkansas, maintenance of this lawsuit in the State will not comport with due process.

B.     The Court lacks specific or general jurisdiction over BVB.

The United States Supreme Court has set forth two methods for evaluating minimum contacts, general jurisdiction and specific jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).  Under the theory of general jurisdiction, the court may hear the lawsuit against BVB if BVB has had "continuous and systematic" contacts with Arkansas, even if BVB's activities in Arkansas have nothing to do with the plaintiff's injuries at issue in this lawsuit.  *Id.* at 415-16.  Conversely, specific jurisdiction is viable only if the injury giving rise to this lawsuit occurred within or has some connection to the State of Arkansas.  *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir. 2004) (citing *Bell Paper Box*, 22 F.3d at 819).  It is evident from the face of plaintiff's complaint, coupled with the affidavits of Robert S. Miller, President of BVB, and Sharon Kitter, Executive Director of Operations for BVB, that BVB has no

contacts with Arkansas to justify the Court's exercise of either specific or general jurisdiction exists over it.

    1.  *BVB is not subject to this Court's general personal jurisdiction.*

When personal jurisdiction is "general," a defendant must have "continuous and systematic" contacts with the forum state such that a court may adjudicate any cause of action brought against the defendant. *Burlington Indus., Inc.*, 97 F.3d at 1103.

Courts look to certain standard criteria to determine whether the nonresident defendant has continuous and systematic contacts with a forum state. See, *e.g., Dever,* 380 F.3d at 1073 (finding no personal jurisdiction where defendant was not incorporated in, nor had its principal place of business in, Arkansas; was not registered to do business in Arkansas; and had no offices, real estate, bank accounts, or agents in the State); *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998) (affirming lack of personal jurisdiction over defendant who was not licensed to do business in the forum state, had no bank accounts, phone number, or mailing address in the state, did not own property or have agents for service of process in the State). The Arkansas Supreme Court, interpreting Arkansas's long-arm statute and constitutional due process considerations, has held that an out-of-state corporation's telephone and mail transactions, standing alone, do not satisfy the minimum contacts requirement of the due process clause. *CDI Contractors, Inc. v. Goff Steel Erectors, Inc.*, 301 Ark. 311, 314, 783 S.W.2d 846, 847 (1992); see also, *John Norrell Arms, Inc. v.*

*Higgins,* 332 Ark. at 30, 962 S.W.2d at 804 (1998) (finding that a corporation had manifestly insufficient contacts with Arkansas to justify general personal jurisdiction when corporation was not registered to conduct business in Arkansas, had no employees in the State, had no agent for service, and had never initiated contact with people in Arkansas); *Glenn v. Student Loan Foundation of Arkansas*, 53 Ark. App. 132, 134, 920 S.W.2d 500, 501 (1996) (finding that "the use of the arteries of interstate mail and banking facilities, standing alone, is insufficient to satisfy due process in asserting long-arm jurisdiction over a nonresident).

As is set forth in the affidavit of Robert S. Miller, BVB is a California corporation with its principal place of business in the State of California. (Exhibit A)  It is not licensed to do business in Arkansas; it does not maintain a bank account in Arkansas, nor does it have a phone number or mailing address in the State. (Exhibit A)  Further, BVB owns no property in Arkansas and has no employees or agents for service of process here. (Exhibit A)  BVB does not "transact business" within the State of Arkansas, as the term is defined in Ark. Code Ann. § 4-27-1501. (Exhibit A)

Plaintiff has not alleged, and will not be able to establish, that BVB has continuous and systematic contacts sufficient to support a finding of general personal jurisdiction in Arkansas. Such contacts simply do not exist.

> 2. *There is no basis upon which the Court can assert specific jurisdiction over BVB.*

In making determinations regarding minimum contacts for specific personal jurisdiction, courts focus on "the relationship among the defendant, the forum, and the litigation." *Calder v. Jones,* 465 U.S. 783, 788 (1984); *Guinness Import Co.,* 153 F.3d at 614. Specific jurisdiction is only viable if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Helicopteros*, 466 U.S. at 414. Plaintiff will be unable to establish that his injury occurred within or had any connection to Arkansas. Courts have refused to assert personal jurisdiction over manufacturers, producers, and publishers where they were not responsible for distribution of the product into the forum state. See *Guinness Import Co.,* 153 F.3d at 614; *Dever*, 380 F.3d at 1073; *Gilmer v. Walt Disney, Co.*, 939 F.Supp. 665 (W.D.Ark. 1996); see also, *Christian v. Barricade Books, Inc.*, 2003 U.S. Dist. LEXIS 8555, 31 Media L. Rep. 2303 (Dist. Ct. N.H. 2003) (holding that the Court lacked personal jurisdiction over a nonresident nationwide publisher).

In *Christian,* plaintiff sued a publisher for invasion of privacy arising from one of the publisher's books. *Id.* The court rejected plaintiff's "stream of commerce theory," in which the plaintiff argued that since the publisher understood that the book would be distributed nationwide, it should be subject to personal jurisdiction in any state in which the book appeared. *Id.* at *12. The court found that the publisher had no offices, employees or agents within the

6

forum state nor did it target the state in its marketing efforts. *Id.* at * 13. The publisher had no ownership interest in the distributor nor did it maintain a joint venture with the distributor. *Id.* None of the distributors were based in the forum state. *Id.* Further, the publisher did not control the manner in which the distributor sold the book into the forum state. *Id.* The court concluded from these facts that the publisher did not purposely avail itself of the privileges of conducting business in the forum state.

Similarly, courts in this Circuit require more than a stream of commerce theory to establish specific personal jurisdiction over a nonresident defendant. See *Guinness Import Co.,* 153 F.3d at 614 (holding "[p]lacement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposely directed toward the forum state"); *Dever*, 380 F.3d at 1073 (holding the "mere fact that defendant's products are found in Arkansas is insufficient" to support a finding of personal jurisdiction through a stream of commerce theory); *Gilmer*, 939 F.Supp. at 674 (W.D.Ark.1996) (finding "the courts have not abandoned the notion that jurisdiction must be premised on activity deliberately directed toward the forum state or on proof of purposeful availment of the privilege of doing business in the forum state"). In *Dever*, the Eighth Circuit held that nothing in the record suggests that defendant "poured its products into a regional distributor with the expectation that the distributor would penetrate the Arkansas market." *Dever*, 380 F.3d at 1075.

A similar lack of contacts warrants dismissal of BVB in this lawsuit. While BVB is the publisher of the Book, the Book was not distributed by BVB; rather, BVB entered into a book distribution agreement (the "Agreement") with Time Warner Book Group, Inc., now Hachette Book Group, USA ("HBG"). (Exhibit B) BVB does not own HBG, and, as the Agreement states, BVB and HBG are not a joint venture. (Exhibit B) HBG has the exclusive right to distribute the Book through normal channels of trade, i.e. retail or wholesale accounts. (Exhibit B) With respect to distribution within the United States, the Agreement provides in general for a broad territory of distribution in the United States, without specifying or targeting states or regions. (Exhibit B) BVB has not directed HGB to target any title, including the Book, specifically for distribution in either the State of Arkansas or the region of the country in which it is located. (Exhibit B) It is simply not the case that BVB has "poured its products into a regional distributor with the expectation that the distributor would penetrate the Arkansas market." *Dever*, 380 F.3d at 1075.

BVB did not purposely direct its activities at any Arkansas retailers or distributors, and in this commercial context such a showing is necessary for the due process clause. See*, e.g., Burlington Indus.,* 97 F.3d at 1103 (holding in a trade misappropriation case, the "non-resident" must have "purposely directed its activities at forum residents"); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990) ("Placement of a product into the stream of

commerce, without more, does not constitute an act of the defendant purposely directed toward the forum state").

Just as there is no basis for general personal jurisdiction over BVB, there is, likewise, no basis to hold BVB in the lawsuit based on specific personal jurisdiction.

    C.    <u>Exercising personal jurisdiction over BVB would offend traditional notions of fair play and substantial justice.</u>

Personal jurisdiction, regardless of whether it is specific or general, requires "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Further, even if a court determines that a defendant has minimum contacts with the forum state, the Court may then consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The Eighth Circuit has developed a five-factor test for determining the sufficiency of a non-resident defendant's contacts with the forum state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.

*Dever,* 380 F.3d at 1073-74. The first three factors are given more significant weight. *Id.* at 1174.

9

As set forth in the affidavits, BVB's contacts with Arkansas are virtually non-existent. BVB is not registered to do business in Arkansas, does not own real estate, personal property, or pay taxes in Arkansas. In addition, BVB does not maintain employees, bank accounts, a mailing address, or a telephone number in the State. (Exhibit A) The presence of a few copies of the Book in Arkansas is insufficient to establish jurisdiction. The assessment of the "nature and quality" and "quantity" of contacts in Arkansas militate strongly against asserting jurisdiction over BVB.

All events giving rise to this lawsuit, according to the complaint, occurred outside of Arkansas. Only two hardcover copies and a small number of paperbacks have been delivered by the distributor to retail or wholesale accounts in the State since the Book was published, and BVB is not aware if these copies have actually been purchased by any individual consumers in Arkansas. (Exhibit B)   While Arkansas has some interest in providing a forum for its residents, its interest in this case is not compelling. The plaintiff's unilateral act of moving to Arkansas and filing the complaint after publication of the Book, when the alleged harm occurred outside of the State and prior to plaintiff's taking up residency in Arkansas, makes the State's interest in his alleged claims attenuated at best. Therefore, whatever minimal interest Arkansas has in providing a forum state for its newly acquired resident does not overcome nonresident BVB's right to due process and its obvious lack of minimum contacts with the State. *Digi-Tel Holdings, Inc.*, 89 F.3d at 525.

Asserting personal jurisdiction on such an attenuated basis would offend traditional notions of fair play and substantial justice.

IV.   Conclusion

For the reasons stated above the Court should dismiss BVB from this lawsuit for lack of personal jurisdiction.

        WILLIAMS & ANDERSON PLC
        111 Center Street
        Twenty-Second Floor
        Little Rock, Arkansas 72201
        (501) 372-0800
        (501) 372-6453 (facsimile)
        E-mail: bdeere@williamsanderson.com

        By: __/s/ Beth Deere_____
            Philip S. Anderson, Ark. Bar # 60001
            Jess Askew, III, Ark. Bar # 86005
            Beth Deere, Ark. Bar #86050
            Clayborne S. Stone, Ark. Bar # 2003102

*Attorneys for Separate Defendant Hyperion, an imprint of Buena Vista Books, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that on this 18th day of August 2006, I served a copy of the foregoing document via the Court's ECF/Pacer electronic filing system upon the following persons:

Jonathan Rosen, Esquire
1645 Lamington Road
Bedminster, NJ 07921
*Attorney for Plaintiff*

Claire Hancock, Esquire
M.N. Norton, Esquire
Gary D. Marts, Esquire
Wright, Lindsey & Jennings
200 West Capitol Avenue, #2200
Little Rock, AR  72201
*Attorneys for Separate Defendants*
*Time Warner and Home Box Office*

                                               __/s/ Beth Deere_____
                                                      Beth Deere