

**Stephanie S. Abrutyn**
Senior Counsel
Litigation

July 24, 2006

Via e-mail (xjonathan@mac.com)
and United States Mail

Jonathan Rosen, Esq.
1645 Lamington Road
Bedminster, NJ 07921

      Re:    *Steinbuch v. Home Box Office, Inc., et al.*

Dear Mr. Rosen:

Thank you again for agreeing to an extension of time for Home Box Office, Inc. to respond to the complaint in this matter. Before our outside counsel prepares a motion to dismiss, I wanted to follow up in more detail on the other part of our discussion earlier this month.

As you know, and as the Complaint acknowledges, although HBO has acquired certain rights in the novel *The Washingtonienne*, it has not yet published anything based on those rights. Time Warner — HBO's parent company which is named as a defendant but has not yet been served — has done nothing at all in relation to the novel. As a result, as to HBO (and Time Warner), Mr. Steinbuch's lawsuit effectively is seeking an advisory opinion based on events that have not yet taken place.

As I mentioned when we spoke, HBO's project based on *The Washingtonienne* is in the early stages of development. You mentioned in our conversation that you believed that you knew an actress who had auditioned for the HBO project. You or she must have confused this project with another, as a casting director has not even been retained for this project and no auditions have been held.

Under these circumstances, none of the causes of action you have asserted could possibly lie against HBO (or Time Warner). Invasion of privacy by publication of private facts (Complaint ¶ IV(a)), as a threshold matter, requires that the defendant have given publicity to the private life of another. *See* Restatement 2d Torts § 652D and Comments. As HBO has not published *anything* relating to *The Washingtonienne* project, let alone communicated anything relating to Mr. Steinbuch to the public at large, it is beyond dispute that he cannot and has not pleaded a claim against HBO for this tort. Moreover, given that the only allegation against HBO involves acquisition of the rights in an *already published* book, anything HBO may publish in a project based on that book is not private. *Id.*

Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036-6737  (212) 512-5610  Fax: (212) 512-5789
Email: stephanie.abrutyn@hbo.com

EXHIBIT E

Dockets.Justia.com

Jonathan Rosen, Esq.
July 24, 2006
Page 2

Similarly, invasion of privacy by misappropriation (Complaint ¶ IV(b)) requires the appropriation of Mr. Steinbuch's name or likeness. HBO, however, has not published anything. It therefore could not have misappropriated his name or likeness. *See* Restatement 2d Torts § 652C.

Mr. Steinbuch's false light claims (Complaint ¶ IV(c)) suffer from the same basic deficiency. A claim for false light invasion of privacy, as a threshold matter, requires the defendant to have given publicity to a matter concerning the plaintiff. *See* Restatement 2d Torts § 652E. HBO has not published anything at all, and therefore clearly has not given publicity to a matter about Mr. Steinbuch that could even arguably place him in a false light.

Along the same lines, Mr. Steinbuch has not and cannot state a claim against HBO for invasion of privacy by intrusion upon seclusion (Complaint ¶ 652B) because HBO has not in fact done anything except acquire rights to a previously published novel. HBO certainly has not physically intruded upon Mr. Steinbuch, nor in the absence of any publication by HBO can he state a claim for a non-physical intrusion, even if such a cause of action existed under Arkansas law.

Lastly, the Complaint asserts a claim for intentional infliction of emotional distress (Complaint ¶ VII). Once again, however, even a cursory examination of applicable law reveals that this cause of action cannot lie against HBO. Outrage, as Arkansas calls the tort also known as intentional infliction of emotional distress, is a narrow cause of action reserved only for "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Peoples Bank & Trust Co. v. Mitchell*, 786 F. Supp. 791, 794 (W.D. Ark. 1992), *aff'd in part and rev'd in part on other grounds*, 978 F.2d 1065 (8th Cir. 1992). All that HBO has done and all that the Complaint alleges HBO has done is acquire rights to develop a book published by a reputable and well-known publishing house into a television program – a type of deal that is struck nearly every day in the film and television business.

Even if HBO was distributing a program based on the novel, the fundamental flaws in Mr. Steinbuch's case would remain. Although the Complaint does not mention which character in the novel he finds objectionable or the specific elements of that character that concern him, literature and film are replete with characters based on or inspired by real persons, some of which are similar to the circumstances here. In the political *roman a clef* "Primary Colors," many characters were inspired by real-life personalities, some of whom objected to their alter-egos. Yet, when one such person expressed her dissatisfaction by filing a lawsuit, the case was dismissed because, "[a]lthough the book was inspired by real-life personalities and events, it was still fiction, and must be analyzed as such...." *Carter-Clark v. Random House, Inc.*, 17 A.D.3d 241, 793 N.Y.S.2d 394, 395 (1st Dept. 2005). Similarly, when a former lover of Terry McMillian filed a defamation claim based on the behavior of a female protagonist in one of McMillian's novels who was inspired by plaintiff, the claim was dismissed. *Welch v. Penguin Books USA, Inc.*, 1991 N.Y. Misc. Lexis 225 (1991). *See also Springer v. Viking*

Jonathan Rosen, Esq.
July 24, 2006
Page 3

*Press*, 90 A.D.2d 315, 457 N.Y.S.2d 246 (1982) (dismissing claim brought by former friend of author who was inspiration for novel's heroine and objected to book's explicit description of character's sexual exploits); *Doe v. Roe*, 638 So.2d 826 (Ala. 1994) (affirming dismissal of false light claim because "[the] book is clearly classified and represented as a novel, which the general public understands to be a fictitious work representative of real life.") Along the same lines, had HBO created a program based on Ms. Cutler's non-fiction blog using Mr. Steinbuch's name, rather than relying on a fictional novel for its project, the First Amendment would preclude Mr. Steinbuch from recovering against HBO for misappropriation. *See Tyne v. Time Warner Entertainment Co.*, 425 F.3d 1363 (11th Cir. 2005).

Nevertheless, the fact remains that the only allegation against HBO is that it acquired rights to *The Washingtonienne*, and HBO has not begun filming on any project relating to the novel, let alone distributed a program. Under these circumstances, Mr. Steinbuch's claims against HBO (and Time Warner) are utterly frivolous and we request that you voluntarily dismiss the claims against HBO and Time Warner at this time. Should we be forced to seek dismissal from the court, we will, pursuant to Rule 11 of the Federal Rules of Civil Procedure, seek sanctions against you and Mr. Steinbuch, including reimbursement of our attorneys fees involved in preparing and litigating the motion to dismiss.

For your information, our local counsel is Claire Hancock, who is with the law firm of Wright, Lindsey & Jennings, LLP, 200 West Capitol Avenue, Suite 2300, Little Rock, Arkansas 72201; telephone (501) 212-1299. I would appreciate your providing Claire or I with contact information for your local counsel, which we assume you have engaged as our research indicates you are not admitted to practice in Arkansas.

Please contact me directly if you would like to discuss any of the issues raised in this letter.

Sincerely,

Stephanie S. Abrutyn

cc:   Claire Hancock