IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

ROBERT STEINBUCH                                                                  PLAINTIFF

VS.                                    NO. 4:06-cv-00620-WRW

JESSICA CUTLER, HYPERION BOOKS,
DISNEY PUBLISHING WORLDWIDE,
HOME BOX OFFICE, and TIME WARNER                                                  DEFENDANTS

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS OF
HOME BOX OFFICE, INC. AND TIME WARNER INC.**

Defendants Home Box Office, Inc. ("HBO") and Time Warner Inc. ("Time Warner") submit this brief in support of their motion to dismiss plaintiff's first amended complaint ("Complaint") and for sanctions against plaintiff and his counsel.

The substantive claims again HBO and Time Warner must be dismissed for one simple, but dispositive reason: plaintiff has not pled – nor can he – that either HBO or Time Warner has engaged in any act which would support any of the claims asserted in this matter. In addition, this Court does not have personal jurisdiction over HBO.[1] Finally, this Court must dismiss plaintiff's complaint against Time Warner in any event because it is a distinct legal entity not liable for any actions by HBO and it has not been properly served with process.

Plaintiff's claims against HBO and Time Warner are wholly baseless, and plaintiff and his counsel are deserving of sanction. The *only* allegation in the complaint against either HBO or Time Warner is that HBO acquired some rights to a book which it may, if it so chooses, develop into a television program. Plaintiff has alleged nothing more, but nevertheless seeks to hold HBO and Time Warner liable for a panoply of privacy torts and intentional infliction of

---

[1] HBO does not have sufficient contacts with Arkansas for general jurisdiction to lie, and the complaint contains no allegation of any action that would give rise to specific jurisdiction. This Court does not have personal jurisdiction over HBO and it reserves the right to re-assert that defense.

emotional distress. Given that there is no factual or legal basis for plaintiff's claims, which is self-evident from the complaint, HBO and Time Warner respectfully submit that the complaint against them must be dismissed and that sanctions are warranted.

## BACKGROUND OF DISPUTE

HBO holds an option to acquire certain rights in a novel entitled *The Washingtonienne*, authored by separate defendant Jessica Cutler and published by separate defendant Hyperion Books. HBO, however, has not exercised its option, nor has it "published" anything whatsoever concerning plaintiff, a fact which plaintiff acknowledges in his complaint. Complaint, ¶ 23.

*The Washingtonienne,* according to the complaint, describes "in graphic detail the intimate amorous and sexual relationship between [separate defendant] Cutler and plaintiff ...." Complaint, ¶ 1. Interestingly, that sentence is the exact language that plaintiff used to describe the "blog" on the World Wide Web for which he sued Ms. Cutler in the United States District Court for the District of Columbia, alleging invasion of privacy and intentional infliction of emotional distress.[2] The litigation in the District of Columbia has been less than smooth sailing for plaintiff. That court, as reported in a Memorandum Opinion and Order dated April 14, 2006,[3] stated in connection with plaintiff's request for a gag order:

> [P]laintiff is distressed by the fact that this lawsuit has drawn media attention. Perhaps the plaintiff should have considered that fact before he filed suit. Perhaps plaintiff's counsel should consider that fact before filing motions in which he repeats salacious

---

[2] *Robert Steinbuch v. Jessica Cutler*, No. 1:05-cv-00970-PLF-JMF (D.C.), Copy of Complaint attached to Motion as Exhibit A. The district court may take judicial notice of public records and may thus consider them on a motion to dismiss. *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003). *See also In re Adams*, 292 B.R. 365, 367 (E.D. Ark. 2003)("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another.")
[3] *See Robert Steinbuch v. Jessica Cutler*, No. 1:05-cv-00970-PLF-JMF (D.C.), Memorandum Opinion and Order, dated April 14, 2006, attached to the Motion as Exhibit B. Again, this Court may take judicial notice of the D.C. District Court's order.

> details and allegations seemingly without regard for the distress that other persons might feel at these public filings. . . . The Court will not order a prior restraint of the free speech of the defendant or her counsel merely because the plaintiff is piqued by the media interest his own lawsuit has sustained or heightened and because he disagrees with the defendant and on her attorney on what constitutes a matter of opinion . . . .

Exhibit B. Plaintiff's suit here, given the pending suit in the District of Columbia, may simply be an attempt to find a more hospitable environment and perhaps deeper pockets. The fact remains, however, that neither HBO nor Time Warner has done anything actionable.

To what extent the "blog" was or was not based in fact, *The Washingtonienne*, written by Ms. Cutler, is a work of fiction, albeit one perhaps inspired by her personal experiences. Although plaintiff does not assert a claim for slander or libel, he complains that the publishing of *The Washingtonienne* constitutes publication of private facts, a misappropriation of his name or likeness, places him in a false light, and intrudes upon his seclusion. He further asserts a claim for intentional infliction of emotional distress. Plaintiff's complaint also acknowledges, however, that neither HBO nor Time Warner published or disseminated the novel.

Other than blanket references to "Defendants," even a cursory reading of plaintiff's complaint reveals that there is not a single factual assertion regarding Time Warner. Time Warner, while the ultimate parent company of HBO, neither has nor had any involvement in any potential HBO project based on *The Washingtonienne,* and plaintiff makes no such allegation.

With respect to the allegations regarding HBO, plaintiff's complaint states only that HBO has "purchased from Defendant Cutler the rights to make her book into a TV series and has started production thereof." Complaint, ¶ 21. Even if plaintiff's statement were correct –

3

which it is not[4] – that alleged fact is insufficient to support plaintiff's claims against HBO. The only other allegations which run to HBO are plaintiff's repeated references to his belief that defendants are "creating a TV series." Complaint, ¶¶ 23, 27, 29 and 31. Again, the act of "creating" a television series, the contents of which are as yet undetermined and which has never aired, is not actionable and plaintiff's complaint must be dismissed.

## ARGUMENT

### I.

### PLAINTIFF'S FAILURE TO STATE A CLAIM

When ruling on a motion to dismiss under Rule 12(b)(6), a district court "must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). Nevertheless, dismissal for failure to state a claim must be granted when plaintiff can prove no set of facts in support of a claim entitling him to relief because "dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Id.* at 627; *Dispensing Solutions, Inc. v. Jouett*, 2006 WL 1991149, *5 (W.D.Ark. 2006). Beyond any doubt, plaintiff here cannot prove facts to support his asserted causes of action against HBO and Time Warner, and his claims against them must be dismissed.

---

[4] HBO has optioned the rights to Ms. Cutler's book, but has not yet exercised its option to move forward with production.

A.   Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff attempts to conjure up a cause of action by asserting that HBO's actions constitute intentional infliction of emotional distress or outrage, but he is incorrect. To establish a claim for outrage (as the tort is identified by Arkansas courts), a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Calvary Christian School, Inc. v. Huffstuttler*, --- S.W.3d ----, 2006 WL 1779525, (Ark., June 29, 2006).

Plaintiff here has failed to allege that any outrageous conduct on the part of HBO (or Time Warner) actually has occurred. In his complaint, he alleges only that HBO has acquired rights to develop a book published by a reputable and well-known publishing house into a television program – a business transaction into which parties enter almost every day in the film and television industry. The facts pled by plaintiff, of conduct which might occur, are certainly not facts which even arguably support a claim for intentional infliction of emotional distress.

In *Calvary Christian*, for example, a student discovered a video camera in a classroom which was occasionally used for a dressing room for school events. Plaintiff sued alleging, *inter alia*, the tort of outrage. The Arkansas Supreme Court first noted that courts must be vigilant and stingy when determining the validity of outrage claims: "the tort of outrage should

5

not and does not open the doors of the courts to every slight insult or indignity one must endure in life." It then reversed the trial court's denial of defendant's motion for a directed verdict, noting that plaintiff's claim was that the video camera *could have been used* to tape him. The Court held that in cases in which it had affirmed a claim for outrage, outrageous conduct *had occurred,* and it pointed out that there is a fine line between conduct that could have been outrageous *if it had occurred* and conduct that is outrageous because *it did occur*. *Id.* Plaintiff's claims in this case must be dismissed for the same reason.

Indeed, this theme of allegational prematurity runs through each of plaintiff's claims against HBO and Time Warner and is fatal to all of them.[5]

B.   Plaintiff's Privacy Claims

Arkansas courts have recognized the "privacy" claims asserted here by plaintiff. *See Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W. 3d 634 (2002). Each, however, requires some *actual* invasion of that privacy and not some *anticipated or potential* invasion. Because, at most, plaintiff here is complaining of a perceived injury he might suffer at the hands of HBO

---

[5] Even if HBO were distributing a program based on the novel, *The Washingtonienne,* the fundamental flaws in plaintiff's case would remain. Literature and film are replete with characters based on or inspired by real persons. In the political *roman a clef* "Primary Colors," many of the characters were inspired by real-life personalities, some of whom objected to their alter-egos. Yet, when one such person expressed her dissatisfaction by filing a lawsuit, the case was dismissed because, "[a]lthough the book was inspired by real-life personalities and events, it was still fiction, and must be analyzed as such." *Carter-Clark v. Random House, Inc.,* 17 A.D.3d 241, 793 N.Y.S.2d 394, 395 (1st Dept. 2005). Similarly, when a former lover of Terry McMillian filed a defamation claim based on the behavior of a female protagonist in one of McMillian's novels who was inspired by plaintiff, the claim was dismissed. *Welch v. Penguin Books USA, Inc.,* 1991 N.Y. Misc. Lexis 225 (1991). *See also Springer v. Viking Press,* 90 A.D.2d 315, 457 N.Y.S.2d 246 (1982) (dismissing claim brought by former friend of author who was inspiration for novel's heroine and objected to book's explicit description of character's sexual exploits); *Doe v. Roe,* 638 So.2d 826 (Ala. 1994) (affirming dismissal of false light claim because "[the] book is clearly classified and represented as a novel, which the general public understands to be a fictitious work representative of real life.").

in the future (a claim which HBO emphatically denies), plaintiff is, in essence, seeking an advisory opinion from this Court that events that have not even taken place constitute an invasion of his privacy. Such an opinion is prohibited by Article III of the United States Constitution and, in any event, should be avoided in the interest of judicial economy. *In re Bender,* 368 F.3d 846, 847-48 (8th Cir. 1004)(Article III limits courts to deciding actual "Cases" and "Controversies," thereby prohibiting them from issuing advisory opinions).

Moreover, the complaint itself fails to plead facts which could support his privacy claims.

1.  Publication of Private Facts

Arkansas courts require that, to sustain a claim for publication of private facts, there be actual public disclosure. According to section 652D of the Restatement (Second) of Torts (1977), followed in *Dunlap v. McCarty,* 284 Ark. 5, 9, 678 S.W.2d 361, 364 (1984), public disclosure of private facts is actionable only if it involves publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation. *See also Milam v. Bank of Cabot,* 327 Ark. 256, 937 S.W. 2d 653 (1997). Here, there has been no "publicity," properly so called, of any kind as the result of any act of HBO or Time Warner. Because HBO and Time Warner have not published *anything* relating to *The Washingtonienne* project, let alone communicated anything relating to plaintiff to the public at large, it is beyond dispute that plaintiff has not and cannot plead a claim against either one of them for this tort.[6]

---

[6] The complaint also asserts that the novel already has been published. As a result, any "facts" emanating from the novel are no longer private.

7

2. <u>Misappropriation</u>

Arkansas recognizes the misappropriation branch of the privacy tort, defining it as the nonconsensual use of the plaintiff's name or likeness for the defendant's commercial benefit. *Milam,* 327 Ark. at 263, 937 S.W.2d at 657. *See also* Restatement 2d Torts § 652C. HBO and Time Warner, however, have not "published" anything nor have they aired any television series, as plaintiff recognizes in his complaint. Complaint, ¶¶ 21, 27. Plaintiff does not allege that they have actually used his name or likeness in any fashion beneficial to them or otherwise, and therefore cannot claim that they have misappropriated either. In short, plaintiff's conclusory allegation fails to contain core facts necessary to rise to the level of a properly pled misappropriation claim.

3. <u>False Light</u>

Plaintiff's false light claim is similarly flawed. The elements of such a claim are public disclosure, falsity, identification of the plaintiff, offensiveness, and fault. *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 639 590 S.W.2d 840, 845 (1979). *See also Addington v. Wal-Mart Stores, Inc.* 81 Ark.App. 441, 452, 105 S.W.3d 369 (2003); *Doe v. Roe,* 638 So.2d 826 (Ala. 1994) (affirming dismissal of false light claim because "[the] book is clearly classified and represented as a novel, which the general public understands to be a fictitious work representative of real life.").

Defendant has not pled facts in his complaint that HBO or Time Warner identified him or publicly disclosed him in a "false" light or in any light whatsoever. Because he has not and cannot allege that they have published anything at all, and therefore neither has given publicity

to a matter about plaintiff that could even arguably place him in a false light, plaintiff has failed to state a claim for false light invasion of privacy.

4. <u>Intrusion Upon Seclusion</u>

Plaintiff's intrusion claim fares no better than his other claims. Arkansas courts recognize such a claim where there is the invasion by one defendant upon the plaintiff's solitude or seclusion. *Milam, supra; Dunlap, supra.* See also Restatement (Second) of Torts, § 652A. Plaintiff, however, does not plead that HBO and Time Warner have physically intruded upon his solitude or seclusion, nor that they have acted in any matter to obtain from or about him facts that remain private. His only allegation is that HBO has acquired certain rights to a previously published book. Complaint, ¶ 21. Accordingly, plaintiff has failed to plead a cause of action against HBO or Time Warner for intrusion upon seclusion.

II.

### THE CLAIMS AGAINST TIME WARNER MUST BE DISMISSED IN THEIR ENTIRETY BECAUSE IT WAS NOT PROPERLY SERVED

Plaintiff's complaint against Time Warner also must be dismissed because plaintiff has not served Time Warner with process pursuant to Fed. R. Civ. P. 4(h)(1). Rather than following that rule by serving "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," plaintiff's process server left the summons and complaint with the employee of another defendant not located in the same place. Accordingly, Time Warner is entitled to dismissal of plaintiff's complaint.

Fed. R. Civ. P. 12(b)(5) authorizes dismissal of a complaint for insufficient service of process. As the United States Supreme Court has held, valid service of process is a prerequisite for a federal district court to assert personal jurisdiction over a defendant. *Omni*

9

*Capital Int'l v. Rodolf Wolff & Co.*, 484 U.S. 97, 103 (1987). Under Fed. R. Civ. P. 4(h)(1), service upon a corporation must be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."[7] The Eighth Circuit has held that plaintiff carries the burden of demonstrating that the person on whom service was made is indeed of one of the classes of people upon whom service of process is authorized under Rule 4(h)(1). *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (requiring plaintiff to produce evidence that person on whom service was made was authorized to accept service on behalf of defendant corporation).

Courts have held that authorization of an agent for service of process must be expressly given. *Amer. Inst. of Cert. Pub. Accts. v. Affinity Card, Inc.*, 8 F. Supp.2d 372, 376 (S.D.N.Y. 1998). Moreover, the representation of a purported agent that he is authorized to accept service is not sufficient to make service upon that person valid when there is no actual authorization. *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) (stating that the "rule is clear that it must appear that any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process, and, further, that the authority to accept such service cannot be shown by the extrajudicial statements of the attorney [agent]"); *see also Whisman v. Robbins*, 712 F.Supp. 632 (S.D.Ohio 1988)(finding that assurances of

---

[7] The federal rules allow service of process upon a corporation pursuant to the federal rules, the law of the state where service is effected, or the law of the state where the district court in question sits. *See* Fed. R. Civ. P. 4(h)(1) & 4(e)(1). The rule is substantially the same in the state courts of New York, where service was purportedly effected, and in Arkansas, where this Court sits. N.Y. R. Civ. P. 311(a)(1) states that personal service on a corporation may be effected on "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service" of the corporation. Similarly, Ark. R. Civ. P. 4(d)(5) states that service on a corporation may be effected "by delivering a copy of the summons and complaint to an officer, partner other than a limited partner, managing or general agent, or any agent authorized by appointment or by law to receive service of summons." Because there is no substantial difference to be found in the federal, New York, and Arkansas rules relating to service of process, Time Warner's analysis proceeds according to the applicable federal rule.

10

agency on part of purported agent, even if they were in fact made, would be insufficient to establish that the defendant had actually appointed the purported agent as their actual agent); *First Amer. Bank, N.A. v. United Equity Corp.*, 89 F.R.D. 81, 84 (D.D.C. 1981) (finding that a clerk who had represented herself as an authorized agent was not such because "her acceptance of service and her own statements of authority [were], in and of themselves, insufficient to establish the required agency relationship").

In the present case, plaintiff's service of process upon Michael Leung-Tat ("Leung-Tat") was insufficient. Leung-Tat has no relationship to Time Warner, and he also was not an expressly authorized principal-agent of Time Warner with authority to accept service of process on its behalf.

Plaintiff's affidavit of service acknowledges that Leung-Tat is an employee of separate defendant HBO. (Exhibit C to the Motion, Affidavit of Service, at ¶ 2). According to that document, Leung-Tat reportedly stated that he was authorized to accept service on behalf of Time Warner. (Exhibit C at ¶ 2). Leung-Tat, however, denies that he ever made any statement intimating that he was authorized to accept service of process on behalf of Time Warner and that he indeed did not have any such authority. (Exhibit D to the Motion, Affidavit of Michael Leung-Tat).

Plaintiff's only "proof" that Leung-Tat was a duly authorized agent to accept service of process on behalf of Time Warner is the statement in the affidavit of service that Leung-Tat represented that he was Time Warner's agent. As demonstrated by the case law cited in the preceding paragraphs, that bald assertion, even if true, is not sufficient to satisfy Rule 4(h)(1)'s requirements for service of process. Plaintiff must demonstrate that Leung-Tat had actual

11

authority to accept service of process. Because plaintiff cannot make such a showing, service of process on Time Warner is insufficient, depriving this Court of jurisdiction over Time Warner and entitling Time Warner to dismissal of the complaint against it.

III.

### THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER HBO

HBO does not regularly or continuously do business in Arkansas, making general personal jurisdiction inapplicable. More to the point at this juncture, the complaint says little to nothing about HBO and, therefore, from the pleading's face it is not apparent that personal jurisdiction over HBO can be inferred. The Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101, as judicially applied, requires a plaintiff to plead some prima facie evidence of personal jurisdiction. *Smith v. Hobby Lobby Stores*, 968 F. Supp. 1356 (W.D. Ark. 1997); *Williams v. GMC*, 573 F. Supp. 577 (E.D. Ark. 1983). Here it is impossible to discern any availing contact with Arkansas by HBO from any allegation in plaintiff's complaint, and therefore plaintiff has failed to plead anything that would form the glimmer of a basis for special personal jurisdiction over HBO.

While Time Warner is HBO's parent company, the complaint does not cite a single act by Time Warner of any kind. It therefore appears that plaintiff's sole basis for his claims against Time Warner is that it is the parent company of the entity that optioned the novel about which plaintiff is complaining. It is hornbook law, however, that a parent corporation generally is not liable for the acts of its subsidiary. *Robinson v. Terex Corp.* 439 F.3d 465, 468 (8th Cir. 2006); *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003); *National Bank of Commerce (of El Dorado) v. HCA Health Services of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990).

Consequently the complaint should be dismissed as against HBO for want of jurisdiction over the person and against Time Warner for want of any legal responsibility for any of the acts alleged in the complaint.

IV.

SANCTIONS ARE APPROPRIATE IN THIS MATTER

As is evident from the complaint itself, plaintiff, a lawyer, and his attorney of record filed this action knowing that there was no basis in law to assert the claims here.

The district court must apply an "objective reasonableness" standard in determining whether a Rule 11 violation has occurred. "The Court must determine whether the attorney signing the pleading conducted a reasonable inquiry into the facts and law supporting the pleading. *In re Griffin*, 330 B.R. 737, *740 (W.D.Ark.,2005)(*citing O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987). The test for whether Rule 11 is violated does not require a finding of subjective bad faith by the attorney or unrepresented party. *See N.A.A.C.P. Special Contribution Fund v. Atkins*, 908 F.2d 336, 339 (8th Cir.1990). As some courts have stated, one can no longer avoid "the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir.1994)(quoting *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir.1987)); *Beaner v. United States*, 361 F.Supp.2d 1063, 1068-1069 (D.S.D.2005). As Rule 11 itself provides, sanctions may be appropriate where a claim is "presented for any improper purpose, such as to harass," including any claim based on "allegations and other factual contentions [lacking] evidentiary support" or unlikely to prove well-grounded after reasonable investigation. Rules 11(b)(1), (3).

Here, it is glaringly obvious that plaintiff and his counsel did not engage in an objectively reasonable inquiry with respect to the law as it applies to the activities of HBO and Time Warner – neither has published any information whatsoever about plaintiff, a fact which is self-evident. In-house counsel for HBO wrote to plaintiff's counsel, outlining in great detail the absence of any conduct by HBO and citing applicable law, and requested that plaintiff dismiss his complaint as to HBO and Time Warner. A copy of the letter is attached to the Motion as Exhibit E. Plaintiff and his counsel, however, did not deign to respond. Based upon the undisputed facts known at the time the complaint was filed and later provided to plaintiff and his counsel, it is clear that the claims against HBO and Time Warner were asserted for improper purpose, whether it be to harass them, forum shop or to extract payment should HBO decide to move forward with a project based upon *The Washingtonienne*.

Given the blatant lack of facts (or even essential allegations) to support any cause of action against HBO or Time Warner, and the failure to investigate the facts and law even following the filing of the complaint, sanctions are warranted in this action, including reasonable costs and attorneys' fees necessitated by the filing of this motion to dismiss. HBO and Time Warner have not done anything to plaintiff but have been haled into court anyway, without any basis in law and fact. The time, trouble, and expense of this motion should never have been required, and it is situations such as this that Rule 11 is designed to address and in which it should be enforced.

## CONCLUSION

For all of the foregoing reasons, defendants Home Box Office, Inc. and Time Warner Inc. respectfully request that this Court grant their motion to dismiss the complaint in its

entirety as against them, and award sanctions as appropriate.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: chancock@wlj.com

By _/s/ Claire Hancock_
Claire Shows Hancock (95013)
N. M. Norton (74114)
Gary D. Marts, Jr. (2004116)

Attorneys for Defendant Home Box Office, Inc.
and Time Warner Inc.

CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Beth M. Deere
Philip S. Anderson
Clayborne S. Stone
Jess L. Askew, III
Williams & Anderson, PLLC
111 Center Street, Suite 2200
Little Rock, AR 72201-2413
E-mail: bdeere@williamsanderson.com
          psa@williamsanderson.com
          cstone@williamsanderson.com
          jaskew@williamsanderson.com

Attorney for Separate Defendants Hyperion Books
and Disney Publishing Worldwide

Jonathan Rosen
1200 Gulf Blvd.
Clearwater, Florida 33767
E-mail: xjonathan@mac.com

Attorney for Plaintiff

I hereby certify that on August 2, 2006, I served a copy of the foregoing by U. S. mail on the following:

Jessica Cutler
422 East Tenth St., Apt. 4R
New York, New York 10003
Pro Se Defendant

_____
Claire Shows Hancock (95013)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: chancock@wlj.com