UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
-----------------------------------------------------------
Robert Steinbuch                                    : Index No.: 4-06 CV0000 620WRW
    Plaintiff,                                      :
                                                    :
 -v-                                                :
                                                    :
Jessica Cutler & Hyperion Books & Disney            :
Publishing Worldwide & Home Box Office &            :
Time Warner                                         :
    Defendants.                                     :
-----------------------------------------------------------

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY DISCOVERY

    Plaintiff, Law Professor at the University of Arkansas at Little Rock School of Law, Robert Steinbuch moved this Court for the first time for an extension of time, up to and including November 15, 2006, to file his responses to Defendants' Cutler, Hyperion Books, Disney Publishing Worldwide, Home Box Office, and Time Warner Motions to Dismiss. All five defendants, represented by eight separately listed lead counsel from some of the biggest firms in this State of Arkansas, initially opposed the motion for an extension of time unless Plaintiff consented to their extortionary demands. Defendants Disney, Hyperion, and Cutler now consent to the extension of time to respond and separately move for a stay of discovery.

I. <u>Under the Federal Rules, Discovery is Not Stayed During a Motion to Dismiss</u>

    Under the Federal Rules of Civil Procedure, discovery continues after a defendant files a motion to dismiss.

> "[A] pending motion to dismiss is not ordinarily a situation that in and in itself would warrant a stay of discovery.". . . The party seeking to stay discovery has the burden of justification. However, defendant has failed to demonstrate beyond mere allegations that resources will be conserved by

> granting the stay.  Further, defendant makes a bald assertion that its motion to dismiss will be granted.  These are mere assertions that have not been substantiated by defendant.  However, "bare assertions that discovery will be unduly burdensome or that it should be stayed pending dispositive motions that will probably be sustained, are insufficient to justify the entry of an order staying discovery generally.

*People With Aids Health Group v. Burroughs Wellcome Co.*, 1991 WL 221179 at *1 (D.D.C. 1991) (quotes and brackets in original, internal citations omitted); *see also Howard v. Galesi*, 107 F.R.D. 348, 350 (SDNY 1985) ("The crux of the defendant's argument is that courts in this Circuit preclude discovery until a valid complaint has been pleaded.  In making this argument, the defendant has assumed that the underlying motion to dismiss will be successful. While the Court does not suggest that the defendant's motion will be denied, it is not persuaded that the granting of this motion is inevitable.").

In response to this statement of the law, Defendants cite to *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.,* 201 F.R.D. 1, 2 (D.C. 2001). Defendants' own case, however, belies their argument.  As the Court therein stated: "A trial court 'ordinarily should not stay discovery which is necessary to gather facts in order to defend against [a] motion [to dismiss].' *Feldman,* 176 F.R.D. at 652; *cf. Coastal States Gas Corp.,* 84 F.R.D. at 282 ('discovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand.')."   *Id*. at 3.  Moreover, the *Chavous* Court continued: "However, the facts of the instant action[, i.e., *Chavous,*] is distinguishable in two material respects [from *People With Aids Health Group v. Burroughs Wellcome Co.*]. First, plaintiffs in this action have moved for summary judgment.  Second, the significant privilege issues presented by the plaintiffs' discovery requests warrant the conclusion that permitting discovery before the need for such discovery is determined would be wasteful

and inefficient." *Id*. Neither of these distinguishing features is present in the instant case.

Indeed, quite the opposite is true. Plaintiff Law Professor Robert Steinbuch has not had an opportunity to take any discovery whatsoever, and one obvious area for required discovery is regarding Defendants' claims as to why this case should be dismissed. *See, e.g., PST Services, Inc. v. Larson*, 221 F.R.D. 33, 37 (N.D.N.Y. 2004) (discovery permitted for plaintiffs that have made a sufficient start toward establishing jurisdiction and have shown that their position is not frivolous); *Greenery Rehabilitation Group, Inc. v. Sabol*, 841 F.Supp. 58, 62 (N.D.N.Y. 1993) ("in a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the party opposing the motion must be allowed discovery of facts demonstrating jurisdiction").

Moreover, Defendants have attached affidavits to their motions, converting them into summary judgment motions. "[T]he party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." *Jones v. City of Columbus*, 120 F.3d 248 (11th Cir. 1997).

Finally, Defendants are incorrect in suggesting that Plaintiff's First Motion for an Extension of Time warrants Defendants' motion for a stay of discovery. First, had plaintiff not sought any extension of time to respond, Defendants would be subject to discovery during the pendency of their motions to dismiss. Unless Defendants believe that this Court will decide their motions to dismiss the day briefing is completed, discovery would be available to Plaintiff for a period well beyond that which plaintiff seeks in his enlargement. In my experience as a Judicial clerk in a Federal District Court and as a litigator, Courts routinely take several months, if not longer, to properly analyze

and decide such matters of importance. This period would run regardless of whether Defendants consented to Plaintiff's First Motion for an Extension of Time, and discovery would take place during this time under the Federal Rules.

II.  Plaintiff Will Demonstrate that this Court Has Jurisdiction over the Defendants

A.  Jurisdiction over Defendants

This Court has jurisdiction over all Defendants. Even a preliminary examination of public information shows significant and directed contacts by Defendants.

> The "minimum contacts" analysis required by the *Fourteenth Amendment* requires consideration of the following factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." *Wines v. Lake Havasu Boat Mfg.,* 846 F.2d 40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir. 1987).

*Mpressions v. Cato*, 2006 U.S. Dist. LEXIS 37637 *4-5 (M.D. MO 2006).

Defendants Hyperion and Cutler purposely availed themselves of Arkansas by selling their book in this jurisdiction. Even a cursory review shows that Defendants' Washingtonienne Book is readily sold in Arkansas. Exhibit 1 (showing Defendants' book for sale in one of many bookstores in Arkansas). Moreover, Hyperion and Disney Publishing sell numerous books in this state, showing their general contacts with Arkansas. Exhibits 2-5,13 (showing many Hyperion & Disney books for sale in one of many Arkansas book stores).

Defendants try to claim that their agent distributed their book, and therefore they are not responsible for selling their book. That is not the law in this Circuit.

> [T]he Court of Appeals observed that "[Defendant] certainly benefited from the distribution efforts of [its distributor], and although [Defendant] claims to have had no actual knowledge that [its distributor] distributed fireworks into Nebraska,

4

> such ignorance defies reason and could aptly be labeled 'willful.'" The Court of Appeals further explained this was not a case in which the defendant had no reason to know that its product would end up in the forum state, but rather was one in which "the defendant poured its products into regional distributors throughout the country, and now would have this court believe that it had no idea its products were being distributed into neighboring states." . . . [T]he Eighth Circuit held that minimum contacts may be predicated on what the defendants should know, and not on what the defendant actually knows. . . . [Defendant] argued that its lack of an office, agents, employees or property in Iowa precluded a finding of personal jurisdiction, but the Court of Appeals disagreed because "as *Barone* illustrates, the absence of this kind of direct marketing presence does not necessarily mean that [Defendant] has not purposely marketed . . . in Iowa." These cases demonstrate that [Defendant's] lack of advertising, offices, and other connections to Missouri are relevant, but not dispositive. Like the fireworks manufacturer in *Barone*, [Defendant] sold its product to a retailer, fully aware the retailer would sell its product in another state. . . . *Barone* and *Vandelune* make clear that it is enough that [Defendant] purposely utilized a distribution method that it knew or had reason to know would cause its products to be sold in Missouri. . . . [Defendant claims] that merely placing a product into the stream of commerce will not constitute sufficient minimum contacts. This is an overstatement of the law; as *Vandelune* explained, it is important to determine the manner of that placement into the stream of commerce. The cases upon which [Defendant] relies are distinguishable in that the defendant sold its product to a wholesaler in the United States, who then contracted with various distributors. Thus, the defendant had no reason to know where in the United States its products would be distributed.

*Mpressions v. Cato* at *6. Indeed, in the instant case, Defendants did not sell their product to the distributor, they hired the distributor – making the connection even closer than in the above-cited cases.

Defendants HBO and Time Warner regularly do business in Arkansas. Indeed, HBO's website directs Arkansas citizens specifically on how to obtain HBO's services. Exhibits 6-8. HBO's services are readily available to Arkansas citizens. Exhibit 9 (showing approximately 25 HBO and HBO-related channels available in Little Rock on Comcast Cable); Exhibit 10 (showing 40 million HBO and Cinemax subscribers in the U.S.). And, HBO hosts sporting events in Little Rock. Exhibit 11 ("Taylor gave boxing fans a new star, as he truly arrived on the world scene when he returned to his hometown

5

[of Little Rock] on March 27, 2004 to face Alex Bunema (23-5, 18 KOs) on HBO's Boxing After Dark series) (emphasis added). Similarly, Time Warner readily does business in Arkansas.[1] Exhibit 12 ("Time Warner have applied to the Arkansas Public Service Commission to start offering phone service"); *see Foster v. Time Warner Entertainment*, 250 F.3d 1189, 1192 ("Foster was employed by Time Warner as a supervisor of customer service representatives in Fayetteville, Arkansas").

    B.    HBO and Time Warner also Claim that They Have Not Acted

HBO and Time Warner assert that "HBO has optioned the rights to Ms. Cutler's book, but has not yet exercised its option to move forward with production." Motion to dismiss and improper Rule 11 motion of Defendants HBO and Time Warner at 4 (document 45 on this Court's docket). HBO and Time Warner wrongly assert that Plaintiff seeks an advisory opinion and therefore cannot bring his valid claims. *Id.* However, HBO and Time Warner have readily promoted and advertised the current and ongoing development of the show, and, accordingly, Plaintiff rightfully seeks injunctive relief.

Prior to this action being filed, a veteran producer/writer and actor in Hollywood approached the undersigned counsel and inquired whether I was aware that the book "The Washingtonienne," based and advertised on my client, Law Professor Robert

---

[1]    "Disney now ranks among the 100 biggest global firms and the second largest global media company (behind Time-Warner). Disney holdings include the following: ABC television and radio networks; 10 U.S. television and 59 U.S. radio stations; ownership in over 10 cable channels, including ESPN International, the global leader in sports networking (with 24-hour broadcasting in 21 languages to over 165 countries); several major film video, and television studios, including Disney, Miramax, and Buena Vista; several major record labels; theme parks in the United States, Japan, and France; the Disney Cruise Line; and 600 Disney retail stores worldwide." W. Bruce Allen, et. al, Managerial Economics 5 (2005).

Steinbuch's life story was optioned by Time Warner / HBO, that Sarah Jessica Parker's production company, Pretty Matches Productions, was developing the project as their premier project to launch her new company, a writer had been attached, a co-executive producer had been attached to the project, Jessica Cutler herself was hired as a Creative Consultant on the project, HBO was listed as the distributor of the upcoming 30 minute comedy, and that it had been announced in the leading industry newspapers.

The Press has readily reported these events. For example, the Washington Post reported that:

> Look out, all you Washingtonians who ever had sex with Jessica Cutler, proposed having sex with Jessica Cutler, discussed sex with Jessica Cutler, or ever brushed up against Jessica Cutler -- the infamous Senate aide whose sexual antics scandalized/enthralled our fair city a couple of years ago. **HBO is plowing ahead with a sitcom based on "The Washingtonienne,"** the D.C.-set novel inspired by Cutler's blog of same name in which she discussed her exploits with a boatload of men around town in such glorious detail. The pay-cable network project is being developed by Sarah Jessica Parker's Pretty Matches production company. . . . The comedy -- unless you're one of Cutler's sex partner-muses -- now has a scriptwriter attached: Vanessa Taylor. . . . And Jason Blum, described as a "young, hot, up-and-coming guy" by one of our sources, has been attached as a co-executive producer. He was the executive producer of HBO's flick "Hysterical Blindness," which starred Uma Thurman and Juliette Lewis as single chicks seeking guys in '80s New Jersey. You'll get a kick out of this: Cutler, who less than two years ago was telling anyone who could use a laptop that she "just took a long lunch with X and made a quick $400," has gone all shy and reticent when we e-mailed her to try to talk to her about the HBO project. She declines to comment, a rep told The TV Column.

www.washingtonpost.com/wpdyn/content/article/2006/03/15/AR2006031502391_p...,
July 24, 2006 (emphasis added).

The Web's best television resource stated that:

> WASHINGTONIENNE (HBO, New!) - Novelist Jessica Cutler's book of the same name is being developed as a half-hour comedy at the pay channel by actress/producer Sarah Jessica Parker and writer/producer Vanessa Taylor ("Jack & Bobby"). "Washingtonienne" detailed Cutler's experiences as a staffer for Sen. Mike DeWine (R-Ohio) who was fired after the popular political blog

7

> Wonkette.com posted excerpts of her online sex diary, in which she talked of trysts with up to six different men. Taylor will pen the pilot script and executive produce with Parker via Parker's recently launched Pretty Matches Productions banner. <u>Cutler herself will serve as a consultant.</u>

http://www.thefutoncritic.com/newswire.aspx?id=7110, July 24, 2006 (emphasis added).

And, Variety, the industry leading source of entertainment news reported that:

> Parker teams to bring sexy tome to cabler.  Sarah Jessica Parker is teaming with scribe Vanessa Taylor ("Jack & Bobby") for a half-hour HBO comedy based on "Washingtonienne," the steamy D.C.-set novel inspired by the real-life sexcapades of author Jessica Cutler.  It's the first project to emerge from Parker's Pretty Matches Prods. since the shingle set up shop at HBO last year.  Parker will exec produce, with Taylor writing the pilot and exec producing.  There are no plans for Parker to act in the project. Cutler will serve as a consultant.  Cutler gained notoriety when D.C.'s Wonkette blog published excerpts from Cutler's online sex diary, in which she talked of trysts with up to six different men.  She was fired from her job working for Sen. Mike DeWine (R-Ohio) as a result. . . .  Within a year, Hyperion published "Washingtonienne," Cutler's novelization of her experiences.  Parker's Pretty Matches then optioned the TV rights to the book and brought in Taylor to write and exec produce the pilot script.  Taylor and Parker are just beginning to flesh out how to bring "Washingtonienne" to the small screen, but Taylor predicted the final result will be "a controversial character."  "There have been a lot of morally ambiguous male characters finding acceptance on TV, but we haven't seen that with female characters," Taylor said, calling the character Cutler created for her novel emblematic of her generation in many ways. . . .  In addition to co-creating "Jack & Bobby," UTA-repped Taylor wrote the FX pilot "The Big Lie" last year.  Her other credits include "Alias," "Everwood" and "Gideon's Crossing."

http://www.variety.com/index.asp?layout=print_story&articleid=VR1117939781&categor..., July 24, 2006.

CONCLUSION

For the above-stated reasons, this Court should deny the Defendants' Motion to Stay Discovery.

Dated: September 10, 2006

  */s/* Jonathan Rosen  
Jonathan Rosen, Esq.  
1645 Lamington Rd.  
Bedminster, NJ 07921  
(908) 759-1116  
Attorney for Plaintiff  
Law Prof. Robert Steinbuch

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2006, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which shall send notification of such filing to the following:

Philip S. Anderson     psa@williamsanderson.com, mroach@williamsanderson.com; bwalton@williamsanderson.com

Jess L. Askew , III     jaskew@williamsanderson.com, eperryman@williamsanderson.com; ssmith@williamsanderson.com

Beth M. Deere     bdeere@williamsanderson.com, fdavis@williamsanderson.com

Gary D. Marts , Jr.     gmarts@wlj.com, rmoles@wlj.com

Claire Hancock     chancock@wlj.com

Jonathan S. Rosen     xjonathan@mac.com

Clayborne S. Stone     cstone@williamsanderson.com

                                                        _/s/_ Jonathan Rosen
                                                      Jonathan Rosen, Esq.
                                                      1645 Lamington Rd.
                                                      Bedminster, NJ 07921
                                                      (908) 759-1116
                                                      Attorney for Plaintiff