IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

ROBERT STEINBUCH     PLAINTIFF

VS.     NO. 4:06-cv-00620-WRW

JESSICA CUTLER, HYPERION BOOKS,
DISNEY PUBLISHING WORLDWIDE,
HOME BOX OFFICE, and TIME WARNER     DEFENDANTS

**REPLY IN FURTHER SUPPORT OF THE MOTION TO DISMISS OF
HOME BOX OFFICE, INC. AND TIME WARNER INC.**

Defendants Home Box Office, Inc. ("HBO") and Time Warner Inc. ("Time Warner") submit this reply to plaintiff's response and in further support of their motion to dismiss plaintiff's first amended complaint ("Complaint").

Plaintiff, in his response to the motion to dismiss, makes no effort whatsoever to overcome the core deficiencies in his complaint, as outlined by HBO and Time Warner in their motion to dismiss. Ignoring that he plainly failed to plead the elements of his claims, plaintiff resorts to placing before this Court voluminous extraneous materials which – he claims – support his theories of liability and personal jurisdiction. Whether or not this Court has personal jurisdiction over HBO (which it does not),[1] that issue can be addressed second (if at all) given that plaintiff utterly has failed to properly plead causes of action for outrage, publication of private facts, misappropriation, false light or intrusion upon seclusion. HBO's and Time Warner's motion to dismiss for failure to state a claim must be granted

---

[1] Time Warner did not move to dismiss for lack of personal jurisdiction. It is, therefore, unclear why plaintiff included pages of argument and extraneous documents in support of his claim of jurisdiction over Time Warner, which in fact was not challenged.

1. <u>Plaintiff's Tort Claims</u>

Rather than addressing HBO's and Time Warner's motion to dismiss for failure to state a claim, plaintiff spends his entire argument attempting to mislead the Court into believing the motion to dismiss is premised on disputed issues of fact. The bulk of plaintiff's brief is devoted to "proving" that HBO's assertion that it has acquired an option on *The Washingtonienne*, but has not yet picked up the option to produce a series, is a "misstatement of fact." Plaintiff's Br., p. 17 – 22. The statements contained in HBO's and Time Warner's motion are, however, accurate, although the entire issue is beside the point. It is undisputed that neither HBO nor Time Warner – which as a parent company itself does not produce or distribute programming, films, or books[2] – has aired a single minute of any program based on *The Washingtonienne*. Under any theory, the act of "creating" a television series, the contents of which are as yet undetermined and which has never aired, is not actionable and plaintiff's complaint must be dismissed.

Plaintiff's *complaint* contains *none of the facts* by which he now attempts to bolster – albeit, without success – his state law claims. He relies upon voluminous extraneous materials which are nothing more than articles from the trade press imprecisely describing what the authors believe has occurred.[3] Those reports, as opposed to plaintiff's twisted characterization

---

[2] Plaintiff asserts in his brief that, "Time Warner specifically contracted to publish and distribute 'The Washingtonienne'...," misleadingly citing to Defendant's Attachment to Document No. 40. Plaintiff's Br. at 3. In fact, as the complete Attachment itself makes plain, the letter and agreement in question involve Time Warner Book Group Inc., not defendant Time Warner. Time Warner Book Group Inc. is a *former* subsidiary of Time Warner that currently has no corporate relationship with Time Warner or HBO. Rather, the book company is a subsidiary of European-based Lagardère SCA.  See Hachette Book Group USA "Who We Are," http://www.twbookmark.com/aboutus.html; Time Warner Inc. Form 10Q/A, September 13, 2006 (reprinted at http://www.shareholder.com/Common/Edgar/1105705/950144-06-8745/06-00.pdf), at 5-8, 12.

[3] When ruling on a motion to dismiss under Rule 12(b)(6), a district court "must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). Plaintiff here goes outside his own complaint and the Court should not consider, let alone credit, these allegations. In addition, HBO and

2

of them, are entirely consistent with HBO's statement that the project is in development, although they do not tell the whole story. It is a story with which plaintiff's counsel claims to be familiar, but has chosen not to share with the Court.

A television series is the result of a long, tortured path. It begins with an idea, which can be based upon an existing work such as a book or may be the original brainchild of a writer. If the idea meets a warm reception from a production company or network, it may be optioned and then go to development, which includes commissioning of a pilot script.[4] A pilot is a "test episode" of a potential television series.[5]

Scripts for pilot episodes often involve multiple drafts, substantial changes from the source material, and rewrites.[6] Many projects never make it past this stage of development, because the writers never complete a script satisfactory to the network who has the option to acquire rights to the project.[7]

If the pilot script meets muster, then the pilot will be filmed. Often, hiring creative talent for a pilot occurs at the same time the script is being developed, although there is no guarantee filming ever will move forward. The pilot's purpose is to engage the interest of network executives enough that they are willing to commit to production of a series, which often includes acquiring the rights by picking up a contractual option that was acquired prior to

---

Time Warner assert that plaintiff's attaching of extraneous material to his response to the motion to dismiss is inappropriate. Nevertheless, should the Court choose to consider the materials submitted by plaintiff, then HBO and Time Warner respectfully submit that the Court also should consider the full universe of materials, including those submitted herewith in response to plaintiff's filings.

[4] Pilot Programs, Museum of Broadcast Communications, http://www.museum.tv/archives/etv/P/htmlP/pilotprogram/pilotprogram.htm (printed October --, 2006) (hereafter "Pilot Programs").

[5] Television Pilot, http://en.wikipedia.org/wiki/Television_pilot (printed October 22, 2006) (hereafter "Television Pilot").

[6] Pilot Programs, *supra.*

[7] *Id.* ("Few scripts are commissioned, and fewer still lead to the production of a pilot -- estimates suggest that out of 300 pitches, approximately 50 scripts are commissioned, and of those, only 6 to 10 lead to production of a pilot.")

production of the pilot.[8] Only a small fraction of pilots produced ever make it to full fledged series and are distributed or shown to the public.[9] "On average, only about 10% of the scripts commissioned by the Hollywood networks actually get to the production stage."[10]

Even if a pilot is filmed, it may never be shown to the public – or never shown to the public in the same guise in which is was originally pitched to network executives. Cast changes, script and plot changes, and a myriad of other variables may come into play before a show is aired, if ever.[11]

Accordingly, even assuming plaintiff is correct that there was some "buzz" surrounding the acquisition of an option to the *The Washingtonienne* by HBO, and even assuming the option had been picked up and production had started (although it has not), such activity is insufficient to save plaintiff's state law claims. As set forth fully in HBO's and Time Warner's motion to dismiss and brief in support:

- Outrage: plaintiff has failed to allege that any outrageous conduct on the part of HBO (or Time Warner) actually has occurred. The facts pled by plaintiff, of conduct which might occur, are certainly not facts which even arguably support a claim for intentional infliction of emotional distress.

- Publication of Private Facts: there has been no "publicity," properly so called, of any kind as the result of any act of HBO or Time Warner. Because HBO and Time Warner have not published *anything* relating to *The Washingtonienne* project, let alone communicated anything relating to plaintiff to the public at large, it is beyond dispute that plaintiff has not and cannot plead a claim against either one of them for this tort.

- Misappropriation: plaintiff does not allege that HBO and Time Warner have actually used his name or likeness in any fashion beneficial to them or otherwise, and therefore he cannot claim that they have misappropriated either. In short, plaintiff's conclusory

---

[8] Television Pilot, *supra*.
[9] *Id. See also* Pilot Programs, *supra*; T. Goodman, *The San Francisco Chronicle*, http://www.sfgate.com/cgi-bin/article.cgi (August 5, 2001)(80% of fall television shows fail).
[10] Television Pilot, *supra*.
[11] Pilot Programs, *supra*.

4

allegation fails to contain core facts necessary to rise to the level of a properly pled misappropriation claim.

- False Light: plaintiff has not pled facts in his complaint that HBO or Time Warner identified him or publicly disclosed him in a "false" light or in any light whatsoever. Because he has not and cannot allege that they have published anything at all, and therefore neither has given publicity to a matter about plaintiff that could even arguably place him in a false light, plaintiff has failed to state a claim for false light invasion of privacy.

- Intrusion Upon Seclusion: plaintiff does not plead that HBO and Time Warner have physically intruded upon his solitude or seclusion, nor that they have acted in any matter to obtain from or about him facts that remain private.

Plaintiff also claims to seek an injunction here, attempting to "piggy-back" his flawed and *premature* "damages" claims onto relief to which he is not entitled. Under the circumstances here, injunctive relief is not available and would be plainly unconstitutional. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976)("The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment Rights" at 559); *New York Times Co. v. United States,* 403 U.S. 713 (1971).

Accordingly, plaintiff's state law tort claims must be dismissed in their entirety because he has failed to state facts or claims upon which relief may be granted.

Further, given the blatant deficiencies in plaintiff's complaint, HBO and Time Warner reiterate their request for sanctions against plaintiff. Here, in light of the response to the motion to dismiss, it is obvious that plaintiff and his counsel did not engage in an objectively reasonable inquiry with respect to the law as it applies to the activities of HBO and Time Warner – neither has published any information whatsoever about plaintiff, a fact which is self-evident. As noted previously, in-house counsel for HBO wrote to plaintiff's counsel, outlining

in great detail the absence of any conduct by HBO and citing applicable law, and requested that plaintiff dismiss his complaint as to HBO and Time Warner. A copy of the letter was attached to the Motion to Dismiss as Exhibit E. Also as noted previously, plaintiff and his counsel did not deign to respond.

Plaintiff now claims that the motion for sanctions was improper because the letter from HBO counsel was not accompanied by a motion and draft brief. Clearly, however, plaintiff and his counsel were placed on notice that if the complaint were not withdrawn, sanctions would be sought. Further, when the motion to dismiss did seek sanctions, plaintiff had some 40+ days to respond.

HBO and Time Warner substantially complied with the requirements of Rule 11 and, given not only plaintiff's refusal but also his inability to defend the claims set out in his complaint in response to the motion to dismiss, plaintiff has failed to meet Rule 11 standards for filing a complaint and this matter warrants sanctions.

2.   Plaintiff's Jurisdictional Claims

Plaintiff also argues that HBO and Time Warner are subject to personal jurisdiction in Arkansas. Time Warner, however, did not move to dismiss for lack of personal jurisdiction.

By lumping all defendants together on the jurisdictional issue, plaintiff appears to be asking the Court to base jurisdiction over HBO on factual allegations applicable to other defendants, including Time Warner, which would be wholly improper. Rather, the Court must analyze each defendant's jurisdictional defense and its alleged forum contacts separately. *See, e.g., Keeton v. Hustler Magazine, 465 U.S. 770 (1984)* ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly-owned subsidiary." at 781,

n.13); *Barret v. Lombardi,* 239 F.3d 23 (1st Cir. 2001)(jurisdiction over subsidiary does not establish jurisdiction over parent); *Perry v. Markman Capital Improvement,* 2002 WL 31248038 (E.D. Pa. 2002)("As its name reflects, personal jurisdiction is personal to each defendant," at *3).

Turning specifically to HBO, plaintiff relies exclusively on matters not pled in the complaint. He first points to HBO's website as evidencing sufficient contacts with Arkansas to support general personal jurisdiction. (Plaintiff does not argue specific jurisdiction as to HBO, as he does against all other defendants.) Although plaintiff refers the Court to several decisions basing specific personal jurisdiction on internet contacts, such as *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119 (W.D. Pa. 1997), he cites no cases predicating general jurisdiction on such contacts. As far as undersigned counsel can tell, that is because they are quite rare. *See, e.g., Gator Com Corp. v. L.L.Bean,* 341 F3d 1072 (9th Cir. 2003), *dismissed as moot,* 398 F.3d 1125 (2005). In any event, in the Eighth Circuit, internet contact alone will not suffice to confer general jurisdiction. *Lakin v. Prudential Securities,* 348 F.3d 704 (8th Cir. 2003).

To sustain general jurisdiction, a defendant's contacts with the forum state must be "continuous and systematic" and "substantial" and of such a nature that he could reasonably foresee having to appear in court there. *Lakin, supra.,* and cases there cited. Clearly the HBO website is not "directed at" Arkansas in any way so as to support Arkansas jurisdiction. *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002); *Falwell v. Cohn,* 2003 WL 751130 (W.D. Va. 2003) (website that "addresses a national audience" is not targeted to any specific state and therefore is insufficient to support Virginia jurisdiction). The "business" that

7

can be done on the HBO website is quite limited, involving primarily items related to programs, such as a "Sopranos" warm-up jacket, video games, books about HBO programming, calendars, posters, t-shirts, and other "collectible" matter. These sale items are not the primary focus of the website, however. The homepage is devoted to information about HBO programming. It does not even contain a box or banner advertisement for the "store;" rather, there is an un-obtrusive link that is no more prominent than any other link on the site. One cannot subscribe to receive HBO programming on the website. If someone wishes to subscribe, that user is transferred to the homepage of the cable or satellite provider of his or her choice, just as in the physical world, where the cable or satellite provider (not HBO) in fact distributes HBO programming to the consumer. *See* HBO.com. Of significant note, although not pointed out by plaintiff, the site is chock-full of information about HBO Series, Films, and other programming, and nowhere does it mention *The Washingtonienne* or any project based on the novel.

Plaintiff next asserts that HBO sometimes broadcasts, and advertises, a prizefight held in Arkansas, and that it airs documentaries or interviews filmed (by independent producers) in Arkansas, allegations not in the complaint and which provide no information about HBO's role, if any, in producing these events, and which say nothing about "systematic and continuous," much less "substantial," contacts with the state.[12] Such significant, non-random and non-fortuitous contacts are what due process of law requires to support general personal jurisdiction. *Burger King v. Rudewicz,* 471 U.S. 462 (1985); *Helicoptores Nacionales de*

---

[12] Plaintiff also claims – falsely – that "HBO has been licensed to do business in Arkansas and has paid franchise filing fees in Arkansas." Plaintiff's Br. at 12. The document cited by plaintiff for this alleged fact refers to a filing from nearly 15 years ago that has since been withdrawn. *See* Plaintiff's Br. Exhibit 23. Moreover, the corporate entity that filing refers to is a predecessor corporation with the same name; defendant Home Box Office, Inc. was formed in 2002. See Records of the Division of Corporations, State of Delaware (https://sos-res.state.de.us/tin/controller).

*Colombia v. Hall,* 466 U.S. 408 (1984); *Alpine View Co. v. Atlas Copco,* 205 F.3d 208 (5th Cir. 2000)(isolated sales, use of product in state, indirect contractual contacts insufficient to establish jurisdiction); *Millennium Enterprises v. Millenium Music,* 33 F.Supp. 2d 907 (D.Ore. 1999) ("sporadic purchases from a supplier are neither substantial nor 'continuous and systematic' contacts with this forum.")  Plaintiff has not pled (or belatedly argued) facts upon which general personal jurisdiction over HBO in Arkansas can be based.

## CONCLUSION

For all of the foregoing reasons, and for those set forth in the motion to dismiss and opening brief of Home Box Office, Inc. and Time Warner Inc., these defendants respectfully request that this Court grant their motion to dismiss plaintiff's complaint against them, in its entirety.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: chancock@wlj.com

By *[signature: Claire Hancock]*
Claire Shows Hancock (95013)
N. M. Norton (74114)
Gary D. Marts, Jr. (2004116)

Attorneys for Defendant Home Box Office, Inc.
and Time Warner Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Beth M. Deere
Philip S. Anderson
Clayborne S. Stone
Jess L. Askew, III
Williams & Anderson, PLLC
111 Center Street, Suite 2200
Little Rock, AR 72201-2413
E-mail: bdeere@williamsanderson.com
　　　　psa@williamsanderson.com
　　　　cstone@williamsanderson.com
　　　　jaskew@williamsanderson.com

Attorney for Separate Defendants Hyperion Books,
Disney Publishing Worldwide and Jessica Cutler

Jonathan Rosen
1200 Gulf Blvd.
Clearwater, Florida 33767
E-mail: xjonathan@mac.com

Attorney for Plaintiff

_____
Claire Shows Hancock (95013)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: chancock@wlj.com