**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**ROBERT STEINBUCH**                                                                                      **PLAINTIFF**

**VS.**                                          **4:06CV00620-WRW**

**JESSICA CUTLER; HYPERION BOOKS;**
**DISNEY PUBLISHING WORLDWIDE;**
**HOME BOX OFFICE; AND TIME WARNER**                              **DEFENDANTS**

**ORDER**

Pending are Motions to Dismiss for Lack of Personal Jurisdiction filed by Defendants

Jessica Cutler ("Cutler"),[1] Disney Publishing Worldwide ("Disney"),[2] and Hyperion Books

("Hyperion").[3]  Also pending are Motions to Dismiss for failure to state a cause of action and for

lack of personal jurisdiction filed by Defendants Home Box Office (HBO) and Time Warner

("Warner").[4]  Warner also alleges that the complaint should be dismissed because it is not liable

for the actions of HBO.  Plaintiff, Robert Steinbuch ("Steinbuch"), responded to all Motions.[5]

---

[1]Doc. No. 28.

[2]Doc. No. 38.

[3]Doc. No. 40.

[4]Doc. No. 44.

[5]Doc. No. 55.

1

Dockets.Justia.com

Cutler[6] and Hyperion[7] filed Replies to Steinbuch's Response.  Steinbuch filed a Motion to Strike the Replies.[8]

## I.  Background

This action began when Hyperion published a book entitled *The Washingtonienne* written by Cutler.  Steinbuch sued for invasion of privacy and intentional infliction of emotional distress because the book describes, in graphic detail, a sexual relationship between Steinbuch and Cutler.  As part of his invasion of privacy claim, Steinbuch alleges that Defendants misappropriated his likeness, placed him in a false light, and intruded on his seclusion.[9]

Cutler and Hyperion contend that there is no basis for personal jurisdiction.

Hyperion is an imprint[10] of Buena Vista Books, Inc., which is a subsidiary of Defendant Disney.  While Disney may be the parent of Buena Vista Books, it alleges that it is a separate and distinct corporation that cannot be held liable for the conduct of its subsidiary.  Disney asserts that it does not have sufficient contacts with Arkansas to establish jurisdiction.

Warner is the parent company of HBO.  According to HBO and Warner, Steinbuch's complaint makes few factual allegations about either company, and fails to make sufficient allegations to establish personal jurisdiction.  HBO and Warner contend that Steinbuch fails to

---

[6] Doc. No. 60.

[7] Doc. No. 59.

[8] Doc. No. 61.

[9] Doc. No. 4.

[10] An imprint is a brand name under which a work is published.  One single publishing company may have multiple imprints.  Source: *Wikipedia* at http://en.wikipedia.org/wiki/Imprint.

allege facts that are essential to the tort claims of invasion of privacy and intentional infliction of emotional distress.

In response to the motions, Steinbuch argues that Cutler, Hyperion, and Disney agreed to distribute *The Washingtonienne* in every state, including Arkansas.  He also asserts that the book is readily available in Arkansas and attaches five affidavits from Arkansans who purchased the book.[11]  Steinbuch argues that Arkansans also can buy the book from Cutler's on-line sex-shop, where she has sold her products to at least three Arkansas residents.[12]  He also produces evidence that Cutler, via the internet, sold an autographed copy of her book in Arkansas.[13]  With respect to HBO and Time Warner, Steinbuch offers documents that demonstrate extensive business activity in Arkansas by both these corporations.

## II.  Authority

### A.  Standard for Motion to Dismiss

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants are subject to jurisdiction.[14]  When jurisdiction is denied, the burden shifts to the plaintiff to allege enough facts to establish jurisdiction.[15]  The plaintiff's *prima facie* showing of jurisdiction must be

---

[11]Doc. No. 55, App. 2, Exs. 4-9.

[12]Doc. No. 55, App. 2, Exs. 6, 14, and 15.

[13]Doc. No. 55, App. 5, Ex. 16.

[14]*Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974).

[15]*Id.*

supported by the pleadings, and also by the affidavits presented with the pleadings.[16]  When a

defendant attaches affidavits that raise a meritorious challenge to personal jurisdiction, the

plaintiff is required to prove jurisdiction by affidavits, testimony or documents.[17]

**B.  Personal Jurisdiction**

In a diversity action, a federal court may assume jurisdiction over nonresident

defendants only to the extent permitted by the long-arm statute of the forum state, and by the due

process clause of the Fourteenth Amendment.[18]  In 1995, the Arkansas General Assembly

amended the long-arm statute to authorize jurisdiction over foreign corporations to the fullest

extent allowed by constitutional due process.[19]

Due process requires "minimum contacts" between the nonresident defendant and the

forum state such that "maintenance of the suit does not offend traditional notions of fair play and

substantial justice."[20]  Under due process, a nonresident defendant's contacts with a forum state

must be sufficient to cause the defendant to "reasonably anticipate being haled into court

there."[21]  The Supreme Court has identified two types of personal jurisdiction -- general and

specific.

---

[16]*Id.* at 260; *see also Davis v. St. John's Health Sys., Inc.*, 348 Ark. 17 (2002) (holding that if the complaint does not allege sufficient facts on which personal jurisdiction can rest, then the complaint is factually deficient, and mere conclusory statements do not suffice).

[17]*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004) (citing *Jet Charter Serv., Inc. v. W. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)).

[18]*Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994).

[19]Ark. Code Ann. § 16-4-101(B) (1999); *see also Mountaire Feeds, Inc. v. Agro Impex*, S.A., 677 F.2d 651, 653 (8th Cir. 1982).

[20]*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[21]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction.[22]  However, if the exercise of jurisdiction arises in a case that does not stem from the defendant's contacts, the exercise of personal jurisdiction is one of general jurisdiction.[23]

Where specific personal jurisdiction over a nonresident is asserted, due process is satisfied if the defendant purposely directed its activities at forum residents, and the litigation results from injuries related to those activities.[24]  When general jurisdiction is in question, a defendant may be subject to the state's exercise of personal jurisdiction if contacts with the state are continuous, systematic, and substantial.[25]

To determine if there are sufficient contacts establishing general jurisdiction, the Eighth Circuit has outlined five crucial factors:  (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.[26]  The first three factors are of primary importance.[27]

---

[22]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

[23]*Id.*; *see also Perkins v. Benguet Mining Co.*, 342 U.S. 437 (1952); *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 n.4 (8th Cir. 1995).

[24]*Burger King Corp.*, 471 U.S. at 472.

[25]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

[26]*Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

[27]*Id.*

Jurisdiction over a parent corporation does not automatically establish jurisdiction over a wholly owned subsidiary.[28]  Each defendant's contacts with the forum state must be assessed individually.[29]

### C.  Personal Jurisdiction and Stream of Commerce Theory

A state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state and those products subsequently injure forum consumers."[30]  Moreover, where individuals purposefully derive benefits from interstate activities, they should be held accountable for the consequences of those activities.[31]  However, the application of the "purposeful availment" rule will vary with the nature and quality of the contacts made by a defendant.  For instance, a defendant will not be haled into another jurisdiction because of "random," "fortuitous," or "attenuated" contacts,[32] or because of the "unilateral activity" of another party.[33]  The contacts must be such that the forum state represents a focal point of both the conduct and  the harm.[34]

---

[28]*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) (citing *Consol. Textile Co. v. Gregory*, 289 U.S. 85, 88 (1933)).

[29]*Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

[30]*World-Wide Volkswagen Corp.*, 444 U.S. at 297-98.

[31]*Burger King* Corp., 471 U.S. at 472; *see also Keeton*, 465 U.S. at 771; *Calder v. Jones*, 465 U.S. 783 (1984) (holding that an outside publisher that distributes magazines or newspaper in a state may be held accountable for damages caused by an allegedly defamatory story).

[32]*Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.* 444 U.S. at 299.

[33]*Helicopteros*, 466 U.S. at 417.

[34]*Calder*, 465 U.S. at 789.

6

**D. Liability for Intentional Conduct**

Under Arkansas law, negligence requires that the plaintiff show a duty was owed and that the duty was *breached*.[35]  As with a negligence claim, an intentional or bad faith claim must still comply with the fundamental notions of duty and breach before there is liability.[36]  Intentional torts, such as invasion of privacy and the intentional infliction of emotional distress, require that a defendant engage in a culpable act.[37]  A culpable act must be affirmative not passive. [38]

**E. Invasion of Privacy and the Single Publication Rule**

Arkansas recognizes the intentional tort of invasion of privacy.[39]  The Arkansas Supreme Court adopted the standard set out in the Restatement (Second) of Torts, which creates four separate torts classified as an invasion of privacy:  (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public.[40]

With the expansion of privacy law, a "false light" invasion of privacy action will often arise from the same circumstances which give rise to a cause of action for defamation.  The

---

[35]*Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1245 (8th Cir. 2006) *(*quoting *Young v. Paxton*, 316 Ark. 655, 660 (1994) (emphasis added).

[36]*Stanton v. State Farm Fire and Cas. Co., Inc.*, 169 F. Supp. 2d 1109 (D. S.D. 2001).

[37]*Lewis v.  Swenson*, 617 P.2d 69 (Ariz. App. 1980) citing Restatement (Second) Torts § § 870, 871 and 871A (1977)).

[38]*Barnes v. Danner*,  216 P.2d 804, 807 (D. Kan. 1950); *Paur v. Rose City Dodge, Inc.*, 438 P.2d 994 (Or. 1968).

[39]*Olan Mills, Inc. v. Dodd*, 234 Ark. 495 (1962).

[40]*Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628 (1979); *see also Flectcher v. Price Chopper Foods of Truman, Inc.*, 220 F.3d 871 (8th Cir. 2000) (applying Arkansas' standards for the tort of invasion of privacy).

similarities between the two causes of action are recognized by federal courts which have often carried over elements of state defamation law into their consideration of false-light invasion actions.[41]  The Supreme Court has analyzed "false light" invasion of privacy claims against publications under the same standards applied to defamation claims.[42]   Based on the similarities between these two causes of actions -- the Single Publication Rule for defamation claims is applied to invasion of privacy claims.[43]  This rule allows one action for damages connected to any single publication, and an award for damages sustained in all jurisdictions to be recovered in one action.  It also bars any other action for damages between the same parties after a judgment is entered.[44]

The Uniform Single Publication Act has been adopted by several states, including Arizona, California, Idaho, Illinois, New Mexico, Pennsylvania, and North Dakota.[45]  This act extended the Single Publication Rule to invasion of privacy claims.  New York judicially adopted the Single Publication Rule and  extended it to cover invasion of privacy.[46]  Arkansas

---

[41]*Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983); *Fogel v. Forbes, Inc*., 500 F. Supp. 1081, 1088 (E.D. Pa. 1980); *Cibenko v. Worth Publishers, Inc*., 510 F. Supp. 761, 766 (D. N.J. 1981); *Braun v. Flynt*, 726 F.2d 245, 250 (1984).

[42]*Cantrell v. Forest City Publishing Co.*, 419 U.S. 245 (1974).

[43]41 A. L. R. 4th 541 §§ 3, 5, 7(b) (1985).

[44]Restatement (Second) Torts § 577A (1977).

[45]Ariz. Rev. Stat. Ann. § 12-651 (1982)); Cal. Civ. Code §§ 3425.1 to 3425.5 (Deering 1984); Idaho Code §§ 7-702 to 7-705 (1979); Ill. Ann. Stat. ch. 126, paras. 11-15 (Smith-Hurd 1987); N. M. Stat. Ann. §§ 41-7-1 to 41-7-5 (1986); N.D. Cent. Code 14-02-10 (1987); 42 Pa. Cons. Stat. Ann. § 8341 Notes (West Supp. 1994).

[46]*Khaury v. Playboy Publications, Inc.*, 430 F. Supp. 1342 (D.C. N.Y. 1977) (*citing Gregoire v. G.P. Putnam's Sons*, 81 N.E. 2d 152 (N.Y. 1953)).

8

has not adopted the Uniform Act nor has the Arkansas Supreme Court recognized the Single

Publication Rule.  In contrast, the District of Columbia recognizes the rule.[47]

## III.  Discussion

### A.  General and Specific Jurisdiction

If Steinbuch's claim of invasion of privacy arose out of or is related to the publication

and distribution of *The Washingtonienne*, then the exercise of personal jurisdiction is one of

specific jurisdiction.[48]  Where specific jurisdiction of a nonresident is asserted, there must be a

direct link between the defendant's contacts with the forum state and the harm.[49]

Steinbuch is an Arkansas resident.  Hyperion, Disney, HBO, and Warner sell their

products or services in this state.  Cutler personally solicited business in this state via the

internet, and she signed a contract agreeing to distribute her book throughout the United States,

including Arkansas.

The alleged harm in this case arose from an invasion of Steinbuch's privacy.  This

alleged invasion of privacy took place when Cutler wrote and Hyperion published a book about

behavior that took place outside Arkansas.  Cutler signed the publication agreement in July

---

[47]*Ogden v. Association of United States Army*, 177 F. Supp. 498 (D.C. Dist. 1959).

[48]*Burger King Corp.*, 471 U.S. at 473, n.15.

[49]*William v. Lakeview Co.*, 13 P.3d 280, 286 (Ariz. 2000), *Precept Medical Products, Inc.*, 282 F.  Supp. 2d 381 (W.D. N.C. 2003); *Kervin v. Red River Ski Area, Inc.*, 711 F. Supp 1383 (E.D. Tex. 1989).

2004,[50] and the book was published in June 2005.[51] Steinbuch became a resident of Arkansas some time after the book was published.[52]

By the time Steinbuch reached this state, the alleged invasion of privacy was complete.[53] Thus, the injury to Steinbuch did not occur as a result of Defendants' activities in this state, nor was it the result of activity directed at Arkansas residents. Because of this, Arkansas cannot assert specific personal jurisdiction. This case should, therefore, be analyzed according to the requirements for general jurisdiction and minimum contacts.

To determine if there are sufficient minimum contacts to establish general jurisdiction, I must consider the above mentioned five factors outlined by the Eighth Circuit.[54] The first three factors focusing on a defendant's contacts with the state are of primary importance to jurisdiction. The interest of Arkansas and convenience of the parties are a secondary concern.[55]

Jurisdiction can be asserted if Steinbuch can make a *prima facie* showing that the Defendants systematically availed themselves of Arkansas' benefits and that their contacts with this state were not "random," "fortuitous," or "attenuated."[56]

---

[50]Doc. No. 28, Ex. C.

[51]Doc. No. 1, ¶ 17.

[52]Doc. No. 55.

[53]Restatement (Second) Torts § 652H (1977) (explaining that one who has established a cause of action for invasion of his privacy is entitled to recover damages for the harm to his interest in privacy resulting from the invasion).

[54]*Burlington Industries, Inc.*, 97 F.3d at 1102 (8th Cir. 1996).

[55]*Id.*

[56]*Keeton*, 465 U.S. at 774; *World-Wide Volkswagen Corp.*, 444 U.S. at 299.

10

### B.  Minimum Contacts

#### 1.  The Quality, Quantity, and Nature of Contacts

The nature, quality, and quantity of the contacts of each Defendant must be considered separately, and the relationship of each Defendant's contacts to Steinbuch's invasion of privacy claim must also be evaluated one by one.[57]  The nature and quality of the contacts depend on an analysis of Defendants' activity in Arkansas and whether their activities here represent a focal point of both the invasion of privacy claim and its resulting harm.[58]

Two Supreme Court opinions analyzed the question of general personal jurisdiction when confronted with facts similar to these facts -- *Calder v. Jones*[59] and *Keeton v. Hustler Magazine*.[60]  The *Calder* case involved a California defamation action against a nonresident writer and an editor of the National Enquirer.  *Keeton* involved a New Hampshire defamation action that was brought by a nonresident plaintiff against nonresident publishers of Hustler Magazine.

In *Calder*, the Supreme Court found that the plaintiff's activities in California were the focus of the defendant's alleged libelous story;[61] and, in *Keeton*, the Court found that the defendant's activities of distributing thousands of its magazines containing allegedly libelous

---

[57]*Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding that each defendant's contacts with the forum state must be assessed individually).

[58]*Calder*, 465 U.S. at 789.

[59]*Id.*

[60]*Keeton*, 465 U.S. at 770.

[61]*Calder*, 465 U.S. at 789 (findings that defendants' conduct was expressly aimed at California, because they wrote and edited an article that they knew would have a devastating impact on the plaintiff in her home state and they knew that the brunt of the injury would be felt there).

material caused the plaintiff substantial harm in New Hampshire.[62]  Defendants' contacts should be measured by using  these two decisions as a guide.

The facts of this case contrast with the facts in *Calder*, where the subject-matter of the newspaper article was based on information from sources in California and concerned the activities of a California resident. Cutler has never set foot in Arkansas and her book is based on her experiences in Washington, D.C.[63]

In *Calder*, the Supreme Court noted that the National Enquirer has its largest distribution in California;[64] and, in *Keeton*, the Court pointed out that Hustler sold thousands of copies of its magazine in New Hampshire.[65]  In both cases, the Court focused not only on the quantity of the contacts, but also on the harm connected to the wide ranging dissemination of the alleged false information.

In this case, Cutler's book has had limited distribution in Arkansas, and Arkansans are not as likely as the residents of Washington D.C. to connect the fictionalized character in Cutler's book with Steinbuch.  It is true that Cutler sold a limited number of items (including an autographed copy of *The Washingtonienne*) from her internet sex-store to Arkansans, but these actions do not come close to the quality and quantity of the contacts shown in *Calder* and *Keeton*.  While Cutler was aware that her book would be distributed nationwide, her contacts

---

[62]*Keeton*, 465 U.S. at 771 and 774 (holding that where a magazine sells thousands of magazines on a regular monthly basis, the harm is purposely directed at New Hampshire and there is no unfairness in calling a defendant to answer for the contents of its national publication where a substantial number of copies are regularly sold and distributed).

[63]Doc. No. 28, Ex. 1.

[64]*Calder*, 465 U.S. at 785, n.2.

[65]*Keeton*, 465 at 772.

with this state are secondary to her overall business activities.  So, the nature and quality of her Arkansas contacts are attenuated, and the quantity of these contacts are minimal.

Hyperion books are sold in this state, and Cutler's book, *The Washingtonienne*, appeared in Arkansas bookstores.  There is no indication that Hyperion mounted a large advertising campaign for *The Washingtonienne* in Arkansas, or hired an agent to distribute the book here.[66]  What the evidence shows is that at least four copies of the book have been purchased here,[67] forty-six copies were sold to retail or wholesale accounts,[68] and two books were purchased from the internet.  Like Cutler, the nature, quality, and quantity of Hyperion's contacts with this state are attenuated.  Arkansas has not proved to be a lucrative market for Cutler's book, and the evidence shows that the book's minimal distribution is diminishing.

Disney  produced an affidavit from its senior vice president stating that Disney is the parent of Buena Vista Books and does not control the business operations and affairs of Buena Vista Books.  The affidavit further states that Disney did not publish *The Washingtonienne*, did not enter into a contract with Cutler, has never paid Cutler, and had nothing to do with the distribution of the book.[69]  Jurisdiction over Disney does not automatically follow because of the actions of its wholly owned subsidiary.[70]

To rebut this affidavit, Steinbuch offers several newspaper articles from the Cleveland Plain Dealer, The Hartford Courant, the New York Post-Standard, the New York Times, and

---

[66]*Asahi Metal Insudstry Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987) (holding that advertising, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state may indicate an intent to serve the forum state's market).

[67]Doc. No. 55, Exs. 4-8.

[68]Doc. No. 40, Ex. 2.

[69]Doc. No. 38, Ex. A.

[70]*Keeton*, 465 U.S. at 781 n.13.

other news sources that connect Disney with the publication of Cutler's book.[71]   Newspaper

articles are not generally admissible evidence, and are not sufficient to overcome sworn testimony

from a witness who has personal knowledge of the facts.[72]   Once Disney attached the affidavit to

its motion, Steinbuch was obliged to offer evidence of jurisdiction, in addition to the allegations

contained in his complaint.[73]

Placement of products in the stream of commerce, without more, is insufficient to

establish minimum contacts for the exercise of personal jurisdiction.[74]   Even though Disney has

an agent for service of process,[75] Steinbuch has failed to show that it regularly employs workers

in Arkansas, owns and leases property here, or otherwise systematically avails itself of the

privilege of conducting business in Arkansas.[76]   Moreover, there is no evidence connecting

Disney to the publication and distribution of Cutler's book in Arkansas.  Steinbuch has failed to

make a *prima facie* showing that Disney had continuous and systematic contacts with Arkansas to

establish general personal jurisdiction, or that it engaged in conduct that caused an injury in this

state.

Steinbuch also named HBO and Time Warner as a parties, alleging that HBO acquired the

rights to make a television series based on *The Washingtonienne*.  Time Warner is the parent

---

[71]Doc. No. 55, Ex. 1.

[72]*Pallotta v. United States*, 404 F.2d 1035 (1st Cir. 1968) (holding that newspaper articles are inadmissible hearsay); *see also* 55 A. L. R. 3d 663 (1974) (general discussion of cases that have found newspapers inadmissible as evidence of the truth of the facts stated in the article).

[73]*Dever*, 380 F.3d at 1073.

[74]*Dever*, 380 F.3d at 1075.

[75]Doc. No. 55, Ex. 8

[76]*Dever*, 380 F.3d at 1074.

company of HBO.   HBO admits that it acquired the rights to Cutler's book for a possible future project, but, HBO has not yet created this television series.

Under fundamental tort principles, in order for HBO to be liable, it must have affirmatively breached a duty it owed to Steinbuch.  There are no allegations in the Amended Complaint that HBO or Time Warner engaged in culpable acts that violated Steinbuch's privacy.[77]  Since neither HBO nor Time Warner have published facts about Steinbuch, much less private facts about him, he has failed to allege an action of invasion of privacy against these two Defendants.

Even though Steinbuch offered evidence of extensive business conducted in this state by HBO and Time Warner, there is no evidence of wrongdoing by these corporations.  So, despite their contacts with this state, their Arkansas business activity has not caused harm to an Arkansas resident such that an exercise of jurisdiction would be necessary for the protection of  Arkansas citizens.

### 2.  The Connection between the Contacts and the Harm

Since Steinbuch's Amended Complaint fails to sufficiently allege facts that Disney's, HBO's, and Time Warner's activities harmed him -- there is no connection between their business activities in Arkansas and the invasion of privacy claim.   Even though Cutler and Hyperion allegedly published private information about Steinbuch, their contacts are not substantially connected to Steinbuch's claim.

As stated above, the character in Cutler's book is a fictionalized character that is described in the book as a Washington attorney who works at the Capitol. So, it is not likely that Arkansas citizens will make the connection between the book's character and Steinbuch.

---

[77]*Barnes*, 216 P.2d at 807.

Cutler directly sold one book to an Arkansas resident -- the rest of her business activity in this state involved selling other products from her internet sex store. Hyperion sells its books in Arkansas, but has not targeted this state as a major market for Cutler's Washington-based sex-scandal book.

## C. Arkansas' Interest and Convenience of the Forum

The remaining factors to be considered are Arkansas' interest in taking jurisdiction of this claim and the convenience of the parties. While the Eighth Circuit has indicated that these two considerations are of less importance -- they can tip the scales, especially if jurisdiction is a close question.

Steinbuch is a resident of this state, but his claim arose before his arrival. Moreover, invasion of privacy claims create harm that is aimed at an individual plaintiff. In other words, unlike libel, Arkansas residents are not being deceived by Cutler's book. So, this case is distinguishable from the *Keeton* case, where the Supreme Court found that New Hampshire had a clear interest in protecting its citizens from alleged falsehoods.[78]

There is no doubt that Arkansas has an interest in protecting its citizens from foreign residents or corporations who come into the state and injure one of its citizens. However, the alleged injurious conduct took place in another state, and the harm to Steinbuch's privacy was inflicted before he came here.

Finally, Steinbuch filed an action against Cutler for invasion of privacy in the District of Columbia before he moved to Arkansas.[79] The subject of this lawsuit is Cutler's publication of an

---

[78]*Keeton*, 465 U.S. at 777.

[79]Doc. No. 28, Ex. B.

internet "blog"[80] which inspired her book.  The application of the Single Publication Rule would likely make the District of Columbia the best forum for this case.  In *Keeton*, the Supreme Court found that the Single Publication Rule was an important factor in New Hampshire's assumption of jurisdiction.[81]

The District of Columbia recognizes the Single Publication Rule and is, therefore, more likely to consider the effects of Cutler's conduct throughout this country, and not just in Arkansas.  On the other hand, Arkansas has not considered or developed this rule.  Therefore, the District of Columbia is able to provide a more far-reaching remedy to Steinbuch by protecting his privacy interest in every state, including Arkansas.

The District of Columbia will provide a more convenient forum for this case.  The events that inspired the book took place in Washington, D.C., and most of the alleged harm occurred there.  Most of the witnesses to Steinbuch's claim are located on the East Coast, and the District of Columbia courthouse will be more convenient.  The District of Columbia is also convenient for Steinbuch -- his attorney is from New Jersey and Steinbuch must appear there in order to continue his pending claim based on the contents of Cutler's internet "blog."

**IV.  Conclusion**

Steinbuch is a resident of Arkansas, and he has shown that Cutler and Hyperion have conducted business in this state, including the sale of a limited number of copies of *The Washingtonienne* -- the book that allegedly invades Steinbuch's privacy.  However, the contacts

---

[80]Blog is a name for weblog and it means to write entries on a computer.  Source:  *The American Dictionary of the English Language* (4th ed. Houghton Mifflin Company 2000) at http:///www.dictionary.com.

[81]*Keeton*, 465 U.S. at 773-75 (holding that the Single Publication Rule adopted by New Hampshire afforded it the opportunity to provide a nationwide remedy to the Plaintiff, and in light of this, New Hampshire had a greater interest in hearing the case).

with Arkansas are not substantial, continuous, and systematic.  When all the circumstances are reviewed, the scales tip against the assumption of personal general jurisdiction of these two Defendants.

For all of the reasons stated above, the Motions to Dismiss filed by Culter, Hyperion, Disney, HBO, and Time Warner are GRANTED and the Complaint is DISMISSED.  The Motion to Strike filed by Steinbuch is DENIED.

IT IS SO ORDERED this 7th day of February, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE